In re Jeffrey and Janet RAINWATER,
Debtors.

Jeffrey and Janet Rainwater,
Plaintiffs/Debtors,

v.

State of Alabama; Fred Thomson, Jr.,
District Attorney for the 40th Judicial
Circuit; Patricia L. Bryant, Alabama
Board of Probation & Parole; Mi-
chael Haley, Commissioner of State of
Alabama Department of Corrections,
Defendants.

Bankruptcy No. 98–42972–JSS.
Adversary No. 99–40102.

United States Bankruptcy Court,
N.D. Alabama,
Eastern Division.

April 16, 1999.

Gilda Williams, Assistant Attorney General, Montgomery, AL, for Alabama.

Jeffrey Willis, Assistant District Attorney, Ashland, AL, for Fred Thompson, Jr.

Andrew W. Redd, Montgomery, AL, for Michael Haley.

Thomas M. Semmes, Anniston, AL, for Debtors.

### MEMORANDUM OPINION

JAMES S. SLEDGE, Bankruptcy Judge.

## I. INTRODUCTION:

This matter is before this Court on the complaint and application of Jeffrey and Janet Rainwater, for injunctive relief pursuant to Fed.R.Bankr.P. 7065; a writ of habeas corpus, pursuant to 11 U.S.C. §§ 105(a) and 106(a); and for compensatory damages and punitive damages, pursuant to 11 U.S.C. § 362(h). The plaintiffs are applying for relief on the grounds that the defendants' actions, which culminated in the revocation of Mrs. Rainwater's probation for failure to pay restitution, violated the automatic stay, pursuant to 11 U.S.C. § 362; and that the state criminal trial court judgment revoking her probation, is a legal nullity and void ab initio, pursuant to the application of the automatic stay.

This Court heard expedited hearings for application of a writ of habeas corpus and injunctive relief under Fed.R.Bankr.P. 7065 on February 18, 1999, and March 9, 1999. Based upon the evidence and arguments presented, this Court delivered an oral ruling in open court dismissing the defendant, the Honorable John E. Rochester, which ruling was reduced to an order entered February 23, 1999; and delivered an additional oral ruling in open court issuing a writ of habeas corpus, and returning the debtor to the status she held as of October 28, 1999, which ruling was also reduced to an order entered on March 10, 1999. The defendants filed numerous motions to dismiss on a multitude of grounds. These motions were heard on March 23, 1999 and this Court delivered an oral ruling dismissing without prejudice and by stipulation of the parties, Dr. Colleen Meeks, and Sheriff Ralph Toland, and issued oral findings and conclusions denying the remaining motions to dismiss. Thereafter, a hearing and oral argument was conducted on the issues of the Eleventh Amendment immunity claim, the *Rooker–Feldman* doctrine, the *Younger* doctrine, and trial was held on the merits of this adversary proceeding, whether the actions of the defendants violated the automatic stay. This Court declined to deliver an oral ruling of the findings and conclusions, and rather took these matters under

advisement. After a review of the testimony, briefs, exhibits, oral arguments, statutory law as well as binding and persuasive case law, and the continuing fact finding through all hearings under Rule 7065, this Court issues and enters this Memorandum Opinion of its findings of fact and conclusions of law.

For the reasons stated herein, and upon the record in open court for those matters adjudicated prior to the final hearing held on March 30, 1999, Mrs. Rainwater's application for writ of habeas corpus has previously been granted and is hereby SUSTAINED. Further, Mrs. Rainwater's request for injunctive relief against these defendants is hereby GRANTED and will remain in effect against these defendants so long as the automatic stay remains in effect. This Court further concludes that the defendants' actions violated the automatic stay by impermissibly attempting to collect, assess, or recover a pre-petition claim without leave of this Court. Further, this Court determines that the debtors are not entitled to recover actual compensatory or punitive damages.

## II. FACTS AND PROCEDURAL HISTORY:

Prior to the initiation of the debtors' Chapter 13 case, Mrs. Rainwater worked for the Clay County Animal Hospital. While working there, Mrs. Rainwater stole over $21,000.00 from the veterinarian, Dr. Colleen Meeks. Mrs. Rainwater was indicted and subsequently pled guilty in *State v. Rainwater*, CC–98–079, *unpub.* (40th Cir.Ala.1998), to Theft of Property, First Degree, ALA.CODE § 13A–8–3, a Class B felony. As Mrs. Rainwater had one prior felony conviction, Judge Rochester of the 40th Judicial Circuit of Alabama sentenced Mrs. Rainwater to a term of ten (10) years, due to the application of ALA.CODE § 13A–5–9, Habitual Felony Offenders—Additional Penalties, which requires that upon a conviction of a Class B felony, a habitual offender must be punished as for a Class A felony.

Upon the sentencing of Mrs. Rainwater, the Assistant District Attorney, on behalf of the State of Alabama, remained silent as to the defendant's probation. As a result, Judge Rochester ordered the defendant to serve a sentence of probation and restitution in lieu of incarceration. The probation order stated that the term of probation was until all restitution payments were made, i.e. five (5) years. Mrs. Rainwater was ordered to pay restitution in the amount of $21,145.64, plus court costs of $221.00 and a victim compensation assessment of $50.00, for a total restitution amount of $21,416.64. The Restitution Order set a monthly payment of $425.00 with payments to begin on June 15, 1998.

Patricia Bryan, the Alabama Probation and Parol Officer supervising Mrs. Rainwater's probation, discussed the conditions of probation with Mrs. Rainwater at a meeting held on June 4, 1998. Ms. Bryan told her that she could "slide" for a month on her payments and that it would not affect her probation. Further, Ms. Bryan told her she had to pay the full amount each month. Mrs. Rainwater told Ms. Bryan that she was attempting to borrow the money to pay off the restitution debt.

Mrs. Rainwater failed to pay any restitution at all due to her husband being ill and out of work. Dr. Meeks called Ms. Bryan on two different occasions that summer to inform her that no restitution was being paid by Mrs. Rainwater. Ms. Bryan met with Mrs. Rainwater on August 14, 1998, to discuss with her the lack of payment. Mrs. Rainwater asked Ms. Bryan if she could pay less because her husband had been sick and they had lost income. While she told Mrs. Rainwater that she had to pay something on the restitution, she admitted that she never told Mrs. Rainwater that any payment would prevent her probation from being revoked. Mrs. Rainwater stated that she would make a payment the next day.

On August 27, 1998, Ms. Bryan informed the sentencing court that Mrs. Rainwater,

along with other probationers, failed to pay their restitution as ordered. The court directed Ms. Bryan to prepare delinquency reports and place the probationers on the court docket. Ms. Bryan complied with the court, and gave notice to Mrs. Rainwater on September 1, 1998, to appear in the sentencing court regarding her failure to pay restitution as ordered.

On September 18, 1998, the Rainwaters filed a Chapter 13 petition under Title 11. They scheduled the restitution as an unsecured non-priority claim. In their proposed plan, the unsecured non-priority allowed claims were anticipated to receive no distribution over the life of the plan.

Without seeking authorization for relief from the automatic stay, Ms. Bryan, on September 25, 1998, filed the Delinquency Report with the sentencing court, recommending revocation of probation. Contemporaneously, she received notice of Mrs. Rainwater's Chapter 13 proceeding by telephone. Prior to the revocation hearing, the District Attorney's office was also notified that Mrs. Rainwater had filed for protection under the Bankruptcy Code. Mrs. Rainwater appeared at the hearing conducted by Judge Rochester on September 28, 1998, where she received a copy of the Delinquency Report and was adjudged to be delinquent in her restitution payments. Judge Rochester set a probation revocation hearing to be held on October 29, 1998.

Still failing to seek authorization and relief from the automatic stay from this Bankruptcy Court, the State of Alabama proceeded to prosecute the alleged violation of Mrs. Rainwater's probation. Judge Rochester was notified of the pending bankruptcy case. At the October 29, 1998 hearing, the parties stipulated that Mrs. Rainwater failed to make any payment toward restitution. Ms. Bryan testified that she had discussed the terms of probation with Mrs. Rainwater including the restitution payments. As of the morning of the hearing, Mrs. Rainwater had still not paid any amount towards the restitution.

Judge Rochester, after oral argument, stated: "It's the judgment of the Court that you have violated your order of probation, specifically that you have refused since May 15 to make any payment toward restitution." He then imposed the original sentence of ten years upon Mrs. Rainwater and sentenced her to the state penitentiary. This Court finds that the state court revoked Mrs. Rainwater's probation because of the failure to pay her restitution debt.

On a Motion for Reconsideration of the revocation of probation, heard on November 24, 1998, Judge Rochester refused to release Mrs. Rainwater. No state court appeal was taken.

### A. First Hearing on Preliminary Injunction—Absolute Judicial Immunity

The Rainwaters subsequently filed this adversary proceeding on February 3, 1999. Plaintiffs requested a Temporary Restraining Order without notice to defendants and this request was denied and the Court scheduled an expedited hearing on the motion for preliminary injunction. At the initial expedited hearing, the plaintiff-debtor, Mrs. Rainwater, was not present due to her incarceration. That hearing was continued in order to have her present. This Court dismissed Judge Rochester, sua sponte, as a party-defendant out of respect for his jurisdiction over the revocation hearing. The issue before this Court is whether Judge Rochester had jurisdiction to determine whether the automatic stay had been violated.[1] As re-

---

1. This Court applied the doctrine of absolute immunity for judges. Judges are absolutely immune from civil liability for damages for their judicial acts. *Bradley v. Fisher,* 80 U.S. 335, 347, 20 L.Ed. 646, 13 Wall. 335 (1871);

*Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority;

viewed later, the state court trial judge had jurisdiction to conduct the probation revocation hearing, but no jurisdiction to consider the automatic stay's application which renders void orders entered in violation of the stay. This Court concluded that the federal-state relations were too severely strained by suit against the state court trial judge, and dismissed Judge Rochester from this proceeding. As this Court discusses further in this opinion, the plaintiffs have alternative relief available against Judge Rochester, including a claim under Title 28, § 1983, if necessary. The court concluded that the relief sought is available with the remaining defendants and that Judge Rochester should be dismissed.

### B. Second Hearing on Preliminary Injunction—Writ of Habeas Corpus

At the second hearing on the Rainwaters' motion for a preliminary injunction, this Court determined that pursuant to Fed.R.Bankr.P. 7065, the Rainwaters presented sufficient evidence that demonstrated some likelihood of prevailing on the merits; an inadequate remedy existed at law; and irreparable harm would occur if the injunction was not granted. The Court next considered the balance of harms between the movant and the non-moving party if relief was granted or denied, and the potential harm to the public interest. *In re Duplitronics, Inc.,* 183 B.R. 1010, 1016 (Bankr.N.D.Ill.1995) (*citing Erickson v. Trinity Theatre, Inc.,* 13 F.3d 1061, 1067 (7th Cir.1994) (citations omitted)); *see also;* 10 COLLIER ON BANKRUPTCY ¶ 7065.03, at 7065–7 (Lawrence P. King ed., 15th ed. rev.1997). This Court issued an order terminating Mrs. Rainwater's incarceration, and enjoined the State from proceeding against her in revocation of her probation until the time of the final hearing on this adversary proceeding.

rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' " *Stump v. Sparkman,* 435 U.S.

The defendant, Fred Thompson, Jr., argued that this Court did not have the power to issue a writ of habeas corpus. This argument failed in light of the Bankruptcy Reform Act (the "Code"), 11 U.S.C. § 101 *et seq.,* which Congress passed in 1978. More specifically, Section 105(a) provides that: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The legislative history indicates that Congress intended to give the court as much power as possible in order to carry out the provisions of Title 11 through the issuance of any order deemed necessary or appropriate:

> "Section 105 is similar in effect to the All Writs Statute, 28 U.S.C. § 1651, under which the new bankruptcy courts are brought by an amendment to 28 U.S.C. § 451. HR 8200 § 213. The section is repeated here for the sake of continuity from current law and ease of reference, and to cover any powers traditionally exercised by a bankruptcy court that are not encompassed by the All Writs Statute. This section is also an authorization under 28 U.S.C. § 2283, for a court of the United States to stay the action of a State court."

H.R.REP. No. 595, 95th Cong., 1st Sess. 316–17 (1977), reprinted in 1978 U.S.C.C.A.N., 5787, 6273–74. By amending 28 U.S.C. § 451 at the time the Code was adopted, Congress indicated the importance and its intention to bring the bankruptcy courts within the scope and power of the All Writs Statute, 28 U.S.C. § 1651. As is indicated by the legislative history, Congress considered all writs, including those for habeas relief, were contemplated in the adoption of 11 U.S.C. § 105(a). Had Congress intended to limit the bankruptcy court's ability to order the release of a prisoner by way of a writ of habeas corpus pursuant to 28 U.S.C.

349, 356–57, 98 S.Ct. 1099, 1104–5, 55 L.Ed.2d 331 (1978) (*citing, Bradley,* 80 U.S. at 351, 20 L.Ed. 646).

§ 2254, Congress would have indicated such a limitation. Under this analysis, and presented with the case at bar, this Court concluded that it had been granted the authority to issue habeas corpus writs.

At this hearing, Mrs. Rainwater testified that she had been transferred from the Clay County Jail to the custody of the Alabama Department of Corrections in late February, 1999. Counsel for the Alabama Department of Corrections, in its cross-examination of Mrs. Rainwater, inquired about the State's continuing efforts to have her pay restitution. He inquired whether she had begun the orientation process to which Mrs. Rainwater replied that she had. Rainwater stated that she was counseled on March 8, 1999, the day prior to the hearing, about the S.I.R. program (Supervised Intensive Restitution Program). Under this program, she would be released from prison, obtain employment, and pay restitution. Counsel also inquired whether she was barred from the work release program.[2] Mrs. Rainwater replied that she was not barred to her knowledge. According to Mrs. Rainwater, the prison counselor would explain the details in the near future. She also testified that she had a job waiting for her at Wellborn Cabinets and that she had a person who was willing to sponsor her.

## C. Hearing on Defendants' Motions to Dismiss

A third hearing was held in this adversary proceeding to rule upon the defendants' multiple motions to dismiss. At that hearing, Mrs. Rainwater stipulated to dismiss without prejudice, Dr. Colleen Meeks and Sheriff Ralph Toland. Without objections from any party in interest, this Court dismissed those parties without prejudice.

**2.** Under the work release program, Mrs. Rainwater would still be imprisoned but would be allowed to go to work on a daily basis and pay restitution.

**3.** *Parker v. Bain (In re Parker),* 68 F.3d 1131, 1138 (9th Cir.1995); *FDIC v. Shearson–American Express, Inc.,* 996 F.2d 493, 498 (1st

## 1. Collateral Attack/Failure to State a Claim Where Relief May be Granted

Fred Thompson, Jr., District Attorney for the 40th Judicial Circuit of Alabama, moved to be dismissed on the grounds that: (1) the bankruptcy court should not review a state court action through collateral attack, (2) his actions did not violate the automatic stay, and (3) that he had absolute prosecutorial immunity for his actions in pursuing the revocation of the plaintiff's probation. The Court continued the motion relying on Eleventh Amendment immunity until the trial and ordered the parties to file briefs. On District Attorney Thompson's first argument, he failed to address the issue that if the plaintiffs' allegations are correct, then the state court action revoking Mrs. Rainwater's probation was void ab initio. *Hucke v. Oregon,* 992 F.2d 950, 953 (9th Cir.1993).[3]

The Ninth Circuit has recently revisited this question and concluded that when state proceedings are considered a legal nullity and thus void ab initio due to violating the automatic stay, the federal court review of those proceedings is not a collateral attack, and the judgments rendered in such a proceeding are not entitled to preclusive effect. *Gruntz v. County of Los Angeles (In re Gruntz),* 166 F.3d 1020, 1025–26 (9th Cir.1999); *see also, In re Audre, Inc.,* 216 B.R. 19, 29 (9th Cir. BAP 1997). Therefore, this federal bankruptcy court action is not a collateral attack upon a state court judgment or order. Further, if the plaintiffs' allegations are found to be correct, the state court judgment cannot be given preclusive effect, as it is a legal nullity and void. *Gruntz,* 166 F.3d at 1025–26.

Cir.1993); *Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1206–7 (3d Cir.1991); *Schwartz v. United States (In re Schwartz),* 954 F.2d 569, 571 (9th Cir.1992); *Ellis v. Consolidated Diesel Elec. Corp.,* 894 F.2d 371, 372 (10th Cir.1990).

■ Thompson's second argument is not supported by the facts. He requests to be dismissed on the grounds that the plaintiffs have failed to assert a claim upon which relief may be granted. This is a motion for dismissal under Fed.R.Bankr.P. 7012(b)(6). This Court is required to adjudicate a Rule 7012(b)(6) motion to dismiss by assuming all facts alleged by the plaintiff in the complaint, and pled against the moving party, are true. *In re Garafano,* 99 B.R. 624, 627–28 (Bankr.E.D.Pa.1989). The standard for review of a 7012(b) motion to dismiss is derived from the Supreme Court's statement that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also, McLain v. Real Estate Bd. of New Orleans, Inc.,* 444 U.S. 232, 246, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980); *Feig v. Kelpe (In re Kelpe),* 98 B.R. 479, 480 (Bankr.W.D.Mo.1989); *Smurzynski v. Gen. Fin. Co. (In re Smurzynski),* 72 B.R. 368, 370 (Bankr.N.D.Ill.1987).

From that standard of review, it is apparent that the defendant, District Attorney Thompson, without relief from the stay, acted in a manner that can be seen as an attempt to collect, assess, or recover a claim against the debtor that arose prepetition. The defendant's actions, if truthfully assumed as alleged, indicate that he violated the automatic stay of § 362 in pursuing the revocation of the plaintiff's probation on the sole ground of failure to pay restitution. As the plaintiffs have pled a claim upon which relief may be granted, District Attorney Thompson's motion to dismiss, as to this ground, was denied. His final argument asserts that he is entitled to absolute prosecutorial immunity.

### 2. *Absolute Prosecutorial Immunity*

■ Under state law, District Attorney Thompson has an immunity for his actions that "is at least as broad as the immunity under a § 1983 action." *Bogle v. Galanos,* 503 So.2d 1217, 1219 (Ala.1987). That immunity extends to actions intimately associated with the judicial phase of a criminal process. However, a violation of the automatic stay of 11 U.S.C. § 362(a) is a federal cause of action. Therefore, the elements and defenses of a federal cause of action are defined by the federal law, not state law. *Howlett v. Rose,* 496 U.S. 356, 375–76, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990). Federal law is preemptive over state law to the extent that it actually conflicts with federal law. *California Fed. Sav. and Loan Ass'n v. Guerra,* 479 U.S. 272, 281, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987); *Martinez v. California,* 444 U.S. 277, 284 & n. 8, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980).

■ Although there are some exceptions, e.g. exemptions and property rights, the construction of the Code enacted by Congress preempted the whole area of bankruptcy law from the states. *Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.,* 124 F.3d 487, 492 (3d Cir.1997); *Gruntz,* 166 F.3d at 1025–26. When compliance with both federal and state regulations pose a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives set forth through Congressionally enacted statutes, an actual conflict occurs. *Guerra,* 479 U.S. at 281, 107 S.Ct. 683. The Supreme Court held that Congress had taken the common-law into account in providing for certain forms of absolute and qualified immunities, but that a state may not exempt persons that Congress subjected to liability by relying upon the state's own common-law heritage. *Howlett,* 496 U.S. at 383, 110 S.Ct. 2430. "If we were to uphold the immunity claim in this case, every State would have the same opportunity to extend the mantle of sovereign immunity to 'persons' who would otherwise be subject to § 1983 liability." *Id.*

■ With the above analyses, this Court concluded that the three grounds for

dismissal advocated by District Attorney Thompson were without merit and his motion to dismiss was denied. District Attorney Thompson's claim to absolute immunity failed to support his motion to dismiss and thereby would not be absolute. *Bogle*, 503 So.2d at 1219. As either absolute or qualified immunity is in conflict with the federal statutes governing the automatic stay and the grant of authority and jurisdiction of this Court in effecting orders deemed necessary and appropriate to carry out the provisions of the Code, the state common-law immunities are preempted by federal law through the Supremacy Clause of the Constitution. Therefore, District Attorney Thompson has failed to meet his burden of proof on the applicability of his advocated immunities.[4]

### 3. Absolute Quasi–Judicial Immunity

Patricia Bryan, the Alabama Pardon and Parole Officer, moved to dismiss on the ground of an absolute quasi-judicial immunity for her part in the revocation of the Mrs. Rainwater's probation. *Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), held that 11 U.S.C. § 362(b)(1) precludes probation officials from enforcing restitution orders while debtor seeks protection under Title 11. *Id.* at 560–63, 110 S.Ct. 2126.[5] As the Supreme Court indicated this precedent is still valid, this Court concluded that the

argument presented by Ms. Bryan was without merit and denied her motion to dismiss.

### 4. Lack of Physical Custody

Finally, Michael Haley, of the Alabama Department of Corrections ("ADOC"), moved for dismissal upon the grounds that the ADOC did not have custody of Mrs. Rainwater and that he is immune from prosecution in federal court under the immunity derived from the Eleventh Amendment of the Constitution. This Court found that at the time of the commencement of this hearing, the ADOC did have custody of the plaintiff. Therefore, the defendant's argument for dismissal was moot. As for his assertion of Eleventh Amendment immunity, upon the plaintiff's amendment to the complaint which removed the prayer for monetary damages against the ADOC, Mr. Haley waived and dismissed his assertion of Eleventh Amendment immunity.

### D. Trial on Alleged Violation of 11 U.S.C. § 362

The remaining questions presented to this Court on the trial date and hearing were: (1) whether the defendant, District Attorney Thompson can claim Eleventh Amendment immunity in light of Congress' intent to abrogate such immunity in bankruptcy cases, the Supreme Court's holding in *Seminole* and *Coeur d'Alene*, and the application of the doctrine found in *Ex*

---

4. District Attorney Thompson claimed as an immunity from suit the constitutional immunity offered to the States by way of the Eleventh Amendment. This Court discusses the applicability of the Eleventh Amendment immunity *supra*.

5. Although the Supreme Court holding in *Davenport*, that restitution was a dischargeable claim in Chapter 13 bankruptcy, was statutorily overruled by the amended language of 11 U.S.C. § 1328(a)(3), the Supreme Court in *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), gave strong indications that the remaining opinion of *Davenport* was still to be held as precedent:

"... we held in Davenport that restitution orders imposed as a condition of probation in state criminal proceedings were 'claims' dischargeable in a Chapter 13 reorganization. (citation omitted) Congress subsequently overruled the result in Davenport. (citation omitted) It did so, however, by expressly withdrawing the Bankruptcy Court's power to discharge restitution orders under 11 U.S.C. § 1328(a), not by restricting the scope of, or otherwise amending, the definition of 'claim' under § 101(5). Consequently, we do not view the Criminal Victims Protection Act as disturbing our general conclusions on the breadth of the definition of 'claim' under the Code."
*Johnson*, 501 U.S. at 83 n. 4, 111 S.Ct. 2150.

*parte Young,* and its progeny; (2) whether the *Rooker–Feldman* doctrine is implicated in this adversary proceeding; (3) whether the *Younger* doctrine is applicable to this adversary proceeding; (4) whether the Court should grant Patricia Bryan's Renewed Motion to Dismiss; (5) whether the defendants' actions and the state trial court judgment violated the automatic stay; and (6) if those actions and the judgment violated the automatic stay provisions of 11 U.S.C. § 362, what remedies requested by the Rainwaters can this Court fashion.

## III. JURISDICTIONAL GRANT:

■ This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334. Within the meaning of 28 U.S.C. § 157(b) as exemplified by 28 U.S.C. § 157(b)(2)(A), (E), and (O), this is a "core proceeding." Bankruptcy judges may hear and determine all core proceedings arising under Title 11. Jurisdiction also exists by the standing, general order of reference from the District Court.[6]

■ The defendant, Michael Haley, Alabama Department of Corrections, and Fred Thompson, Jr., District Attorney for the 40th Judicial Circuit of Alabama, asserted immunity from suit by maintaining this Court lacks jurisdiction over them and this proceeding pursuant to the Eleventh Amendment of the United States Constitution. Courts have the "power to interpret the language of the jurisdictional instrument and its application to an issue before the court." *Stoll v. Gottlieb,* 305 U.S. 165, 171, 59 S.Ct. 134, 83 L.Ed. 104 (1938). The determination of whether jurisdiction exists is a question which federal courts must consider. *In re Wolverine Radio, Co.,* 930 F.2d 1132, 1137–38 (6th Cir.1991). As the Eleventh Amendment is a limitation on federal jurisdiction, this Court can properly consider whether there is a prop-

er grant of jurisdiction over the complaint. *Demery v. Kupperman,* 735 F.2d 1139, 1149 n. 8 (9th Cir.1984), *cert. denied,* 469 U.S. 1127, 105 S.Ct. 810, 83 L.Ed.2d 803 (1985). Therefore, this Court shall determine whether these defendants are properly asserting an immunity under the Eleventh Amendment.

### A. Eleventh Amendment Immunity:

■ Mr. Haley of ADOC waived and dismissed his assertion of immunity under the Eleventh Amendment. Therefore, this Court need only determine the applicability of the Eleventh Amendment as to District Attorney Thompson. The party asserting Eleventh Amendment immunity and which stands to benefit from its acceptance, bears the burden of proving its applicability. *Christy v. Pennsylvania Turnpike Comm'n,* 54 F.3d 1140, 1144 (3d Cir.1995); *ITSI TV Prods., Inc. v. Agricultural Associations and State Fair,* 3 F.3d 1289, 1291–92 (9th Cir.1993). The Eleventh Amendment provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.

As there are a multitude of issues within the assertion of Eleventh Amendment immunity, this Court will first determine whether the party asserting such immunity has the appropriate standing. Next, this Court will address the issue of whether the Eleventh Amendment is a subject-matter jurisdictional issue or a waivable enactment of sovereign immunity afforded the State by the Amendment. This Court will also determine whether the Eleventh Amendment is applicable to this proceeding. After the determination of applicability, this Court will analyze whether Con-

6. Mrs. Rainwater stated in her complaint that this was a core proceeding under § 157(b)(2)(K). Although her counsel is incorrect in asserting that this is an adversary proceeding to determine the validity, extent, or priority of a lien; he is correct in stating that it is a core proceeding.

gress has the power to abrogate a State's Eleventh Amendment immunity under the Fourteenth Amendment and applied through Title 11 in light of the Supreme Court's holding in *Seminole*. Finally, this Court will then determine whether the *Ex parte Young* doctrine is applicable.

### 1. Standing

The immunity granted by the Eleventh Amendment extends only to States and Governmental entities which are arms of the State. "While the application of the Eleventh Amendment is a question of federal law, nevertheless, the answer to the question as to whether a particular state agency is entitled to immunity from federal jurisdiction must depend on the characteristics, capacities, powers, and immunities of such agency as defined by the law of the state." 36 C.J.S. *Fed.Cts.* § 50(1). Within the State of Alabama, the District Attorney is a public officer who represents the sovereign power of the people and is defined as the foremost representative of the executive branch pursuing criminal law enforcement. *Dickerson v. State,* 414 So.2d 998, 1008 (Ala.Crim.App.1982); *Piggly Wiggly No. 208, Inc. v. Dutton,* 601 So.2d 907, 910 (Ala.1992); ALA. CONST. amend. 328, § 6.20(a). Therefore, under Alabama law, the defendant, District Attorney Thompson, has the standing to assert the claim of Eleventh Amendment immunity.

### 2. Effect of the Eleventh Amendment on this Court's Jurisdiction

The Supreme Court has held that the Eleventh Amendment is not to be read in terms of a federal court's reach or competence to hear a matter involving a State, but rather, "a State can waive its Eleventh Amendment protection and allow a federal court to hear and decide a case commenced or prosecuted against it. The Amendment, in other words, enacts a sovereign immunity from suit, rather than a non-waivable limit on federal judiciary's subject-matter jurisdiction." *Idaho v. Co-*

*eur d'Alene Tribe of Idaho,* 521 U.S. 261, 267, 117 S.Ct. 2028, 2033, 138 L.Ed.2d 438, 446 (1997). Although criticized and urged to change this direction, the Supreme Court adhered to this precedent and found that such proposed doctrinal revisions have failed to be accepted by a majority of the Court. *Coeur d'Alene,* 521 U.S. at 267, 117 S.Ct. at 2033. As this Court is bound by the precedent set and repeatedly adhered to by the Supreme Court, it concludes that although the Eleventh Amendment is a waivable enactment of a State's immunity granted it by the Eleventh Amendment, it does not strip this Court of its subject-matter jurisdiction.

### 3. Applicability of the Eleventh Amendment

There are several tests available to determine whether the Eleventh Amendment immunity claim is applicable. The Third Circuit applies a three-part test in *Christy*. *Christy,* 54 F.3d at 1144–45. The Second Circuit utilizes a six part test in *Mancuso v. New York State Thruway Authority,* 86 F.3d 289, 293 (2d Cir.1996), which was gleaned from its analysis of the Supreme Court holding in *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979). In the Tenth Circuit, a five part test has been enumerated in *Duke v. Grady Municipal Schools,* 127 F.3d 972, 978–82 (10th Cir.1997). The most important test for whether an entity can claim Eleventh Amendment immunity is whether the state's coffers will be liable for any judgments. *Christy,* 54 F.3d at 1144–45. In this instance, the State of Alabama's treasury would be liable for a monetary judgment against District Attorney Thompson. Other test factors include: how the governing members of the entity are appointed; how the entity is funded; whether the entity's function is traditionally one of local or state government; and whether the entity's obligations are binding upon the state. *Mancuso,* 86 F.3d at 293–96. Under the laws of the State of

Alabama, the District Attorney is an elected official from a circuit of counties; funded from tax appropriations at both the local and state levels; and responsible for investigating, prosecuting, administrating, and executing the laws of the State of Alabama on behalf of the executive branch. ALA CONST. ART. VI § 164; ALA. CONST. AMEND. 328, § 6.20(a); ALA.CODE §§ 12–12–9, 12–17–180, 17–2–1, 36–3–3; *Dickerson,* 414 So.2d at 1008; *Dutton,* 601 So.2d at 910. From the application of these test factors to District Attorney Thompson and his office, this Court concludes that the Eleventh Amendment immunity is applicable. Finding that the Eleventh Amendment is otherwise applicable, this Court must now determine if Congress abrogated that immunity by the enactment of § 106 or if the doctrine of *Ex parte Young* gives this Court jurisdiction to hear the complaints alleged against District Attorney Thompson.

### 4. Abrogation of the State's Eleventh Amendment Immunity and Seminole

■■■■ There is only one Constitutional provision that empowers Congress to abrogate a state's Eleventh Amendment immunity in federal court. Under the Fourteenth Amendment, Congress is given the power to enforce, by appropriate legislation, the provisions of that article. U.S. CONST. amend. XIV § 5. This empowers Congress to abrogate the States' immunity from private suits in federal courts to enforce due process and equal protection rights guaranteed by the Fourteenth Amendment. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). For Congress to appropriately abrogate a State's immunity, two elements must be apparent in such legislation. First, there must be unequivocal language indicating Congress's intent to override the Eleventh Amendment. *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *see also, Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d

252, 266 (1996). Second, the statute enacted by Congress must fall within its enforcement power under the Fourteenth Amendment. *Woods v. Cloyd W. Miller Co.,* 333 U.S. 138, 144, 68 S.Ct. 421, 92 L.Ed. 596 (1948).

#### a. Unequivocal Language

■■■ Congress's intent to permit private suits against the States in a federal forum must be "unmistakably clear in the language of the statute" and absent such language the legislative history is irrelevant. *Atascadero,* 473 U.S. at 242, 105 S.Ct. 3142. To that end, § 106(a)(2) of the Bankruptcy Code provides that a bankruptcy court may hear and make a determination upon any issue arising with respect to several enumerated sections of the Bankruptcy Code and apply it to governmental units. Further, Congress unequivocally intended to abrogate a State's Eleventh Amendment immunity by stating: "Notwithstanding any assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following...." 11 U.S.C. § 106(a). Enumerated within § 106(a)(1) is: § 105, the Power of the Court; § 106, Waiver of Sovereign Immunity; § 362, the Automatic Stay; § 502, Allowance of Claims or Interests; and § 523, Exceptions to Discharge. The Supreme Court has held that this section, prior to its current amendments, may allow for declaratory or injunctive relief, but that as previously written, it is not sufficient to allow bankruptcy actions seeking a monetary recovery against a state. *Hoffman v. Connecticut Dep't of Income Maintenance,* 492 U.S. 96, 102, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989).

#### b. Within the Enforcement Power of the Fourteenth Amendment

■■■ The second test to determine whether Congress successfully abrogated a State's Eleventh Amendment immunity requires that the enactment of such abroga-

tion be within the enforcement power of the Fourteenth Amendment. *Fitzpatrick,* 427 U.S. at 455, 96 S.Ct. 2666; *Woods,* 333 U.S. at 144, 68 S.Ct. 421. It does not require that Congress explicitly state that it enacted such statute upon the power of Section 5 of the Fourteenth Amendment, but there must be something about the statute that connects it to a recognized aim of the Fourteenth Amendment. *Sacred Heart Hosp. of Norristown v. Pennsylvania (In re Sacred Heart Hosp. of Norristown),* 133 F.3d 237, 243 (3d Cir.1998); *Wyoming Dep't of Transp. v. Straight (In re Straight),* 209 B.R. 540, 555 (D.Wyo. 1997); *Headrick v. Georgia (In re Headrick),* 200 B.R. 963, 967 (Bankr.S.D.Ga. 1996). The factors to consider in determining whether legislation may be deemed enacted pursuant to Section 5 of the Fourteenth Amendment depends upon: (1) whether the statute is regarded as an enactment to enforce the Fourteenth Amendment rights; (2) it is plainly adapted to such an end; and (3) it is consistent with the letter and the spirit of the Constitution. *Katzenbach v. Morgan,* 384 U.S. 641, 651, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966).

The Bankruptcy Code specifically provides for the abrogation of a State's Eleventh Amendment immunity, and thereby provides that States are subject to monetary damage awards for violations of the automatic stay. Courts have held, however, that Congress had no power to abrogate the states' Eleventh Amendment immunity because the Bankruptcy Code was enacted pursuant to Congress's Article I powers and not under Section 5 of the Fourteenth Amendment. *Dept. of Transportation v. PNL Asset Management Co.,* 123 F.3d 241, 244 (5th Cir.1997); *Sacred Heart Hosp. of Norristown v. Pennsylvania (In re Sacred Heart Hosp. of Norristown),* 133 F.3d 237, 243 (3d Cir.1998); *Schlossberg v. Maryland Comptroller of the Treasury (In re Creative Goldsmiths of Washington, D.C., Inc.),* 119 F.3d 1140, 1144–47 (4th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1517, 140 L.Ed.2d 670 (1998).

States and arms of the State are immune from suit in federal court by private individuals to enforce federally-created rights under statutes enacted pursuant to the broad legislative powers found in Article I of the Constitution. "Even when the Constitution vests in Congress complete lawmaking authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States." *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 1127–28, 134 L.Ed.2d 252, 277 (1996). *Seminole* expressly overrules the Supreme Court holding in *Pennsylvania v. Union Gas Company,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), which stated that Congress had the power to override the Eleventh Amendment when legislating pursuant to the Commerce Clause of Article I of the Constitution. Therefore, states are immune from suit in federal court by private parties for violation of any statute that was enacted pursuant to the legislative powers found in Article I, which encompasses the broadest range of federal laws, including bankruptcy. *cf. Seminole,* 517 U.S. 44, 116 S.Ct. at 1127–28, 134 L.Ed.2d 252.

In light of *Seminole* and its progeny, there are courts holding that § 106 of the Bankruptcy Code was enacted under Section 5 of the Fourteenth Amendment. These cases are the minority opinion, and conclude this issue on the reasoning that within the Code, there are a "vast number of privileges and immunities which are enforceable through the Fourteenth Amendment" as these are incident to federal citizenship, thereby granting Congress the power to enact legislation enforceable against the states through the Fourteenth Amendment. *Willis v. Oklahoma (In re Willis),* 230 B.R. 619, 623 (Bankr. E.D.Okla.1999); *Straight,* 209 B.R. at 555; *Headrick,* 200 B.R. at 967 (Bankr.S.D.Ga. 1996); *Mather v. Oklahoma Employment Sec. Comm'n. (In re Southern Star Foods,*

*Inc.)*, 190 B.R. 419, 426 (Bankr.E.D.Okla. 1995).

Another court recently breathed new life into § 106 in determining that, like the above minority opinion, the abrogation of sovereign immunity is constitutional. In *O'Brien v. Vermont Agency of Natural Resources (In re O'Brien)*, 216 B.R. 731 (Bankr.D.Vt.1998), Judge Conrad held that upon a close examination of the limitation provisions of Section 106, and by its literal terms, the statute does not violate the Eleventh Amendment. *Id.* at 736–37. Judge Conrad continued:

> ... the plain language of § 106(a) expressly disavows any intention to 'create any substantive claim for relief or cause of action not otherwise existing under ... nonbankruptcy law,' and specifically requires that 'enforcement ... against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit....' The Eleventh Amendment is, obviously, 'nonbankruptcy law applicable to such governmental unit.' Section 106 is not unconstitutional, because the relevant jurisdictional statutes permit bankruptcy causes of action to be enforced against the states in state court. The Supremacy Clause ensures that federal law will be enforced in a forum where the Eleventh Amendment does not apply.

*Id.* at 737; (applying Bankruptcy Court's jurisdiction under 28 U.S.C. § 1334(b)). This leaves the private individual a limited set of options. The private party can bring the cause of action against the State in the state's court system, or attempt to enlist the aid of the federal government to sue for damages in a federal court on their behalf, or as is applicable in this instance the individual can attempt to sue state officials in federal court, for prospective declaratory and injunctive relief under the doctrine of *Ex parte Young*.

### 5. Application of the Doctrine of Ex parte Young

 The Eleventh Amendment bars suits for damages when the State is the real party in interest, absent the State's consent, waiver, or the abrogation of the State's immunity by Congress. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). "The general rule is that a suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) (citations omitted). Even if the remedy sought was purely equitable relief, the jurisdictional bar of the Eleventh Amendment applies regardless of the relief sought. *Pennhurst*, 465 U.S. at 100–01, 104 S.Ct. 900; *see also, Cory v. White*, 457 U.S. 85, 90, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982) ("It would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin the State itself simply because no money judgment is sought.").

 As District Attorney Thompson has the requisite standing to assert the Eleventh Amendment immunity, suit against the State is barred by that immunity unless this suit falls within an exception which has been recognized for certain suits seeking declaratory and injunctive relief against state officers in their individual capacities. *Coeur d'Alene*, 521 U.S. at 268–70, 117 S.Ct. at 2034, *see Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). To have this doctrine apply in a federal case, the plaintiff must proceed against a state official or state officials, and not proceed directly against the State as an entity. This requirement rests upon a fictional distinction between the named official and the State. *Pennhurst*, 465 U.S. at 114 n. 25, 104 S.Ct. 900. This brings an irony to Constitutional law

in that a state official's conduct and action may be considered 'state action' for purposes of the Fourteenth Amendment, yet evade that consideration for purposes of the Eleventh Amendment. *Florida Dep't of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 685, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982).

▆▆▆ A careful balancing and accommodation between State and federal interests is singularly applicable in determining whether the *Ex parte Young* exception doctrine is implicated in the facts of this case. Due to this, the application of *Ex parte Young* is an exercise in line drawing and is to be approached on a case-by-case basis. *Coeur d'Alene,* 521 U.S. 261, 278–80, 117 S.Ct. at 2039–40, 138 L.Ed.2d 438. The Supreme Court has enumerated two separate and general instances were *Ex parte Young* is applicable. First, is the instance where "no state forum [is] available to vindicate federal interests, thereby placing upon Article III courts the special obligation to ensure the supremacy of federal statutory and constitutional law. This is a most important application of the *Ex parte Young* doctrine and is exemplified by the facts in *Young* itself." *Coeur d'Alene,* 521 U.S. at 268–70, 117 S.Ct. at 2034, *see Ex parte Young,* 209 U.S. at 145–48, 28 S.Ct. 441.

### a. No Available State Forum to Vindicate Federal Interests

In *Young,* the party sought a determination that a state rate-setting scheme was unconstitutional. While seeking a federal injunction against the state's Attorney General to prohibit the enforcement of the scheme, Young urged a lack of necessity for federal intervention. Young's argument was that the parties could wait until the state brought enforcement proceedings against the railroad and then test the scheme's validity by raising constitutional defenses. The Supreme Court rejected Young's argument on two grounds: first, a single violation may not prompt a speedy prosecution; and second, the penalties for

violations were so severe a railroad official could not test the law without grave risk of heavy fines and imprisonment. A federal suit for equitable relief would be "undoubtedly the most convenient, the most comprehensive and the most orderly way in which the rights of all parties can be properly, fairly and adequately passed upon." *Ex parte Young,* 209 U.S. at 166, 28 S.Ct. 441.

▆▆ As in *Young,* Mrs. Rainwater faces not only the risk of imprisonment, but the actuality of such imprisonment. To state that Mrs. Rainwater must bring this action in the same forum that revoked her probation, instead of bringing such action in front of the federal forum specifically granted jurisdiction over the automatic stay, only underscores the inadequacy of a state procedure to vindicate the federal law rights at stake under Title 11. Although the State of Alabama does have adequate tribunals for criminal and civil law, the federal law enacted by Congress has preempted state law in regard to bankruptcy law and more specifically, the automatic stay. As the Ninth Circuit stated in *Gruntz,* bankruptcy law is federal and has preempted state law. The state courts do not possess the jurisdiction to entertain and decide upon questions and issues of federal bankruptcy law; for Congress granted the federal courts the original and exclusive jurisdiction over bankruptcy law. *Gruntz,* 166 F.3d at 1025–26.

▆▆▆ This Court is granted original and exclusive jurisdiction over all cases under Title 11. 28 U.S.C. § 1334(a); General Order of Reference from the District Court. In addition, this Court is granted original but not exclusive jurisdiction over all civil proceedings arising under Title 11. 28 U.S.C. § 1334(b); General Order of Reference from the District Court. Further, this Court, as any other court, has the inherent power to ensure that its orders and judgments issued are adhered to, implemented, and properly executed. 11 U.S.C. § 105; 28 U.S.C. § 1334. Finally,

through the application of the abrogation of sovereign immunity, this Court is granted the power to "hear and determine any issue arising with respect to the application of such sections to governmental units." 11 U.S.C. § 106(a)(2). Under these facts, the state forum is not an adequate judicial forum to resolve the issue of whether that same forum is in violation of the automatic stay by proceeding to revoke Mrs. Rainwater's probation for failure to pay restitution.

The state may argue that it has adequate tribunals to ensure the supremacy and application of the federal law on bankruptcy and the automatic stay to state criminal proceedings, but that argument begs the question of whether the entity that may be violating the automatic stay is the proper entity to make such a determination.

### b. Interpretation of Federal Law

■■■ The second general instance for applying *Ex parte Young* is when the case or controversy calls for an interpretation of federal law. *Coeur d'Alene,* 521 U.S. at 272–276, 117 S.Ct. at 2036–37. In this instance, the application of *Ex parte Young* is expansive, because this is the inherent interest the federal courts have in determining and vindicating federal rights. *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985); *Pennhurst,* 465 U.S. at 105, 104 S.Ct. 900. Although this instance may seem to be the most encompassing, the Supreme Court recently narrowed the focus of this exception. The Supreme Court notes that the Supremacy Clause makes it simply irrelevant whether the claim is brought in state or federal court. *Coeur d'Alene,* 521 U.S. at 274–76, 117 S.Ct. at 2037. The state courts are an adequate forum for the resolution of federal law and federal questions:

"Interpretation of federal law is the proprietary concern of state, as well as federal, courts. It is the right and duty of the States, within their own judiciaries, to interpret and to follow the Constitution and all laws enacted pursuant to it, subject to a litigant's right of review in this Court in a proper case. . . . Where, as here, the parties invoke federal principles to challenge state administrative action, the courts of the State have a strong interest in integrating those sources of law within their own system for the proper judicial control of state officials.

Our precedents do teach us, nevertheless, that where prospective relief is sought against individual state officers in a federal forum based on a federal right, the Eleventh Amendment, in most cases, is not a bar. . . . The *Young* exception may not be applicable if the suit would 'upset the balance of federal and state interests that it embodies.' The exception has been 'tailored to conform as precisely as possible to those specific situations in which it is necessary to permit the federal courts to vindicate federal rights.'"

*Coeur d'Alene,* 521 U.S. at 274–76, 117 S.Ct. at 2037–38 (citations omitted). Each and every state within the United States is bound by federal law. Being bound by federal law means that each State must comply with and enforce the federal law, its provisions and its rights therein. *O'Brien,* 216 B.R. at 736–37. Therefore, even though every State has an inherent interest in the application of the provisions and rights under federal law, where federal statutes impose a liability upon the States, the Supremacy Clause makes that statute the supreme law of the land, which thereby makes that statute fully enforceable in any state forum. *Id.* at 737.

By Constitutional intent and Congressional enactment, the federal bankruptcy law has preempted any state law on the subject and any attempt by state "officials to avoid or evade the privileges and immunities conferred by Congress on debtors and their other creditors would be a crime", pursuant to 18 U.S.C. § 242, and would give rise to a civil remedy, pursuant to 28 U.S.C. § 1983. The bankruptcy court's "judicial power" [11 U.S.C. §§ 105,

106; 28 U.S.C. §§ 157, 1334] incontestably covers both. *O'Brien,* 216 B.R. at 738 n. 8 (presuming that bankruptcy courts would have jurisdiction over § 1983 actions arising under Title 11, or arising in or related to cases under Title 11).

■ Here, the debtor, Mrs. Rainwater, has a federal right to the automatic stay as applied pursuant to 11 U.S.C. § 362. In a determination of whether the State violated the automatic stay, the federal bankruptcy court is in the best position to determine that issue and to vindicate the federal right of the automatic stay if it is found to have been violated by the State's actions. Although the State has an acute interest in its criminal proceedings, the Supreme Court specifically noted that such interest can be subject to and preempted by the application of bankruptcy law. *Davenport,* 495 U.S. at 560–63, 110 S.Ct. 2126. "It is not an irrational or inconsistent policy choice to permit prosecution of criminal offenses during the pendency of a bankruptcy action and at the same time to preclude probation officials from enforcing restitution orders while a debtor seeks relief under Chapter 13." *Id.* at 561, 110 S.Ct. 2126.

The Supreme Court in *Coeur d'Alene* refused to apply the *Young* doctrine. The reason for such refusal was that the parties' cause of action was a request to declare land currently held by the State of Idaho to be property of the tribe. *Coeur d'Alene,* 521 U.S. at 287–89, 117 S.Ct. at 2043. The Supreme Court refused to allow the federal court to determine an action so central to the existence of the State as its sovereign control over its own lands.[7] *Id.* at 284–87, 117 S.Ct. at 2042–43. The Supreme Court reasoned that the Idaho state courts were uniquely adequate to determine the issues surrounding the parties' cause of action. *Id.*

Unlike the *Coeur d'Alene* case, this Court is faced with the application of federal law under the Bankruptcy Code. The automatic stay's applicability is central to the orderly process of the debtors' bankruptcy petition and case. Therefore, the exceptions to the Eleventh Amendment immunity, as stated in *Ex parte Young,* and its progeny, are applicable in this adversary proceeding. Because this Court finds that the *Ex parte Young* doctrine is applicable to give it jurisdiction over the District Attorney and because no party has adequately raised a constitutional challenge to 11 U.S.C. § 106, this Court declines to determine, at this time, whether Congress's abrogation of a State's immunity, pursuant to § 106 is constitutional. Therefore, this Court concludes it has jurisdiction over District Attorney Thompson by use of the *Ex parte Young* doctrine.

### B. Rooker–Feldman Doctrine:

■ Having determined that but for the exception to the Eleventh Amendment, found in the doctrine of *Ex parte Young,* this Court has jurisdiction over the causes of action and the parties, this Court now moves to a determination of the applicability of the *Rooker–Feldman* doctrine. As a limitation on the review of state court judgments, the *Rooker–Feldman* doctrine holds that the Supreme Court has the exclusive jurisdiction to review state court judgments for errors in federal law. *District of Columbia Ct. of Appeals v. Feldman,* 460 U.S. 462, 482–86, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362, (1923).

#### 1. Analysis and Test under the Rooker–Feldman Doctrine

■ The *Rooker–Feldman* doctrine holds that a losing party in state court is

---

7. A unique difference is evident in Title 11 cases. Pursuant to 28 U.S.C. § 1334(e), and the Standing Order of Reference from the District Court, this Court "shall have exclusive jurisdiction of all property, wherever located, of the debtor as of the commencement of such case, and of the property of the estate." The federal courts in *Coeur d'Alene* would have been ruling as an extension of the state court system if allowed to determine the property rights of the parties.

barred from seeking what in substance would be appellate review of the state court judgment in the lower federal courts, based upon the losing party's claim that the state judgment itself violates the loser's federal rights. *Bennett v. Yoshina*, 140 F.3d 1218, 1223 (9th Cir.1998); *Dale v. Moore*, 121 F.3d 624, 626 (11th Cir.1997). The federal district courts lack jurisdiction to engage in what is essentially an appellate review of state court determinations of federal questions or to evaluate constitutional claims which are "inextricably intertwined" with a state court judgment. *Port Authority Police Benevolent Ass'n., Inc. v. Port Auth. of New York & New Jersey Police Dep't*, 973 F.2d 169, 177 (3d Cir. 1992); *Blue Cross & Blue Shield of Maryland, Inc. v. Weiner*, 868 F.2d 1550, 1554–55 (11th Cir.1989). This doctrine is jurisdictional, and therefore, if a party does not raise it, its defense is not waived, but rather the court must raise it sua sponte. *Worldwide Church of God v. McNair*, 805 F.2d 888, 890 (9th Cir.1986).

■ Even where a state court judgment is challenged as "void" because it is based upon a claim which is preempted by federal law, a lower federal court still has no power to set aside the state court judgment. *Olson Farms, Inc. v. Barbosa*, 134 F.3d 933, 937 (9th Cir.1998). However, in application to bankruptcy law and violation of the automatic stay, the *Rooker–Feldman* doctrine has been applied, but with a different inspection. *See, e.g., Gruntz*, 166 F.3d at 1026; *Davis v. Bayless*, 70 F.3d 367, 375–76 (5th Cir.1995); *Pavelich v. McCormick (In re Pavelich)*, 229 B.R. 777, 782–83 (9th Cir. BAP 1999). Through the preemption of bankruptcy law, a state court cannot sit in judgment over determinations of the provisions of Title 11. Accordingly, the hard and fast doctrine of *Rooker–Feldman* is not analyzed in the same manner.

■ The Ninth Circuit has aptly explained the analysis to determine whether claims are "inextricably intertwined"

with a state court's decision in a particular case:

> " . . . claims are 'inextricably intertwined' if the district court must 'scrutinize not only the challenged rule itself, but the [state court's] application of the rule....' If, in order to resolve the claim, 'the district court would have to go beyond mere review of the state court rule *as promulgated*, to an examination of the rule *as applied* by the state court to the particular factual circumstances of [the plaintiff's] case,' then the court lack jurisdiction."

*McNair*, 805 F.2d at 892 (*quoting Razatos v. Colorado Supreme Court*, 746 F.2d 1429, 1433 (10th Cir.1984)) (emphasis in original). Another insight to the application of *Rooker–Feldman* to alleged violations of the automatic stay can be found in the holding of *Garry v. Geils*, 82 F.3d 1362 (7th Cir.1996), which concluded that the plaintiff's § 1983 action seeking relief for condemnation of his land was barred by the *Rooker–Feldman* doctrine when "the injury alleged was only complete when the state court actually condemned the property." *Id.* at 1368.

■ In order to determine whether the *Rooker–Feldman* doctrine is applicable, this Court must ask whether the injury alleged by the federal plaintiff resulted from the state court judgment itself, or whether it is distinct from that state court judgment. *Powell v. Powell*, 80 F.3d 464, 466 (11th Cir.1996); *see also Pope v. Wagner (Matter of Pope)*, 209 B.R. 1015, 1022 n. 9 (Bankr.N.D.Ga.1997). In answering that question, if the injury alleged resulted solely from the state court judgment, then the doctrine of *Rooker–Feldman* requires this Court to find that it lacks subject matter jurisdiction; however, if the alleged injury is distinct from that judgment and maintains an injury not 'inextricably intertwined' with the state judgment, then the *Rooker–Feldman* doctrine is inapplicable. *Neal v. Wilson*, 112 F.3d 351, 356–57 (8th Cir.1997).

## 2. Application of the Rooker–Feldman Doctrine

In this case, Mrs. Rainwater is seeking injunctive relief, release from incarceration, and compensatory damages based upon the defendants' actions allegedly violating the automatic stay, which culminated in the revocation of her probation for failure to pay restitution and the State's continuing attempts to facilitate the recovery of restitution. Under federal bankruptcy law as applied to the present facts, any action to collect a pre-petition debt from the debtor, the property of the debtor, or the property of the estate, is a willful violation of the automatic stay, pursuant to 11 U.S.C. § 362, if the creditor knew of the bankruptcy filing and did an intentional act in furtherance of collection. *See, e.g., Jove Eng'g, Inc. v. Internal Revenue Serv.*, 92 F.3d 1539 (11th Cir.1996).

Reiterating arguments previously espoused, this Court has been granted original and exclusive jurisdiction for all cases in bankruptcy under Title 11. *See* U.S. CONST. Art. I, § 8, cl. 4; 28 U.S.C. § 1334(a); 11 U.S.C. § 157(a); and Standing Order of Reference from the District Court. "The automatic stay is one of the fundamental debtor protections provided in the bankruptcy laws." H.R.REP. No. 95–595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296. This stay was designed to protect the relative positions of the creditors and to shield the debtors from the financial pressures during the pendency of their bankruptcy proceeding. *McMahon v. George Mason Bank (In re McMahon)*, 94 F.3d 130, 133 (4th Cir.1996); *Stringer v. Huet (In re Stringer)*, 847 F.2d 549, 551 (9th Cir.1988). To give to the state courts the jurisdictional grant "to determine the effect of and the exceptions to such a fundamental bankruptcy tool 'would be inconsistent with and subvert the exclusive jurisdiction of the federal courts by allowing state courts to create their own standards....'" *Gruntz*, 166 F.3d at 1024–25 (*quoting, Gonzales v. Parks*, 830 F.2d 1033, 1035 (9th Cir.1987)).

Several bankruptcy courts hold that it is the bankruptcy court alone that has the exclusive jurisdiction to determine questions involving the automatic stay. *Gruntz*, 166 F.3d at 1024–26; *In re Raboin*, 135 B.R. 682, 684 (Bankr.D.Kan. 1991); *In re Sermersheim*, 97 B.R. 885, 888 (Bankr.N.D.Ohio 1989).

In the instance where a state court's action violates the automatic stay, the *Rooker–Feldman* doctrine is inapplicable. The doctrine relies upon the premise that where the state "court had jurisdiction of both the subject matter and the parties; that a full hearing was had therein; that the judgment was responsive to the issues, and that it was affirmed by the Supreme Court of the State on an appeal … no court of the United States other than this [the Supreme] Court could entertain a proceeding to reverse or modify the judgment for errors of that character." *Rooker*, 263 U.S. at 415–16, 44 S.Ct. 149. Under federal bankruptcy law, a state court action, proceeding, and judgment rendered in violation of the automatic stay are a legal nullity and void ab initio, thereby not entitled to the preclusive effect they would otherwise garner under the *Rooker–Feldman* doctrine. *Gruntz*, 166 F.3d at 1026; *James v. Draper (In re James)*, 940 F.2d 46, 52 (3d Cir.1991); *Audre, Inc. v. Casey (In re Audre)*, 216 B.R. 19, 29 (9th Cir. BAP 1997). The Supreme Court has summed up this issue in holding that "there appears to be only one exception to this hard and fast [Rooker–Feldman] rule of federal-state comity, and it comes into play only when the state proceedings are considered a legal nullity and thus void ab initio." *James*, 940 F.2d at 52 (*citing Kalb v. Feuerstein*, 308 U.S. 433, 438–40, 60 S.Ct. 343, 84 L.Ed. 370 (1940)).

## C. Younger Doctrine

Prior to this Court reaching the argument on the applicability of the *Younger* doctrine, a discussion of the application of the Anti–Injunction Act is required. The Anti–Injunction Act, 28 U.S.C. § 2283,

states that "[A] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." As noted in the statute, there are three exceptions. This Court has been granted the power and jurisdiction under 11 U.S.C. § 105, to issue any order, process, or judgment necessary or appropriate to carry out the provisions of Title 11. Pursuant to Section 106(a)(3), Congress granted this Court the power and jurisdiction to enter such against a governmental unit. In a similar manner, the Supreme Court concluded that § 1983 actions came within an "expressly authorized" exception contained in the Anti–Injunction Act, but did "not question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding." *Mitchum v. Foster*, 407 U.S. 225, 243, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). Therefore, this Court has been expressly authorized by Congress, through the enactment of 11 U.S.C. §§ 105 and 106, to issue an order enjoining a state court from proceeding.

■ Further, this proceeding meets the second exception to the Anti–Injunction Act. If a state court were permitted to proceed with collection efforts in violation of 11 U.S.C. § 362, such action would undermine the purpose and provisions of Title 11. This would abdicate this Court's grant of jurisdiction and power to a state court, thereby allowing it to fashion its own interpretation of the provisions and purpose of Title 11. As this Bankruptcy Court possesses original and exclusive jurisdiction over cases under Title 11, it possesses exclusive jurisdiction to determine the effect, purpose, and provision of the automatic stay of 11 U.S.C. § 362. To determine whether a state court action is in violation of the automatic stay necessitates the issuance of an injunction in "aid of its jurisdiction." Therefore, under the

Bankruptcy Court's grants of jurisdiction and power, and as applied to the facts of this case as pled, the Anti–Injunction Act should not be applicable as there are two separate and applicable exceptions. However, where the Anti–Injunction Act holds no bar to enjoining a state court proceeding, the principles of 'comity' and 'federalism' may still prevent a federal court from interfering with state court proceedings.

■ The final doctrine this Court needs to address in order to make a proper determination whether it has the jurisdiction over this cause of action and the parties and to address the merits of this adversary proceeding is found in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. Under the *Younger* doctrine, "a federal court should abstain from enjoining an ongoing state criminal proceeding absent a showing of bad faith prosecution or harassment, or a showing that the challenged statute is flagrantly and patently violative of express constitutional prohibitions." *Younger*, 401 U.S. at 53–54, 91 S.Ct. 746; *see also, First Alabama Bank of Montgomery, N.A. v. Parsons Steel, Inc.*, 825 F.2d 1475, 1482–85 (11th Cir.1987). After *Younger*, the Supreme Court stated that if the District Court concluded that the state court judgment was not entitled to preclusive effect under state law, federal law, and the Full Faith and Credit Act, it would then be in the best position to decide the propriety of a federal court injunction under the general principles of equity, comity, and federalism. *Mitchum*, 407 U.S. at 243, 92 S.Ct. 2151.

■ Under *Younger*, a federal court must abstain to allow the state court to adjudicate all claims, both state and federal. *Younger*, 401 U.S. at 49–53, 91 S.Ct. 746. This mandatory abstention avoids the unnecessary friction in state and federal relations. The Supreme Court notes that such federal intervention could "readily be interpreted as reflecting negatively upon the State Court's ability to enforce constitutional principles." *Moore v. Sims*,

442 U.S. 415, 426, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (Stevens, J., dissenting) (*quoting Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602–3, 95 S.Ct. 1200, 1207–8, 43 L.Ed.2d 482 (1975)).

### 1. Application of Younger Abstention Doctrine

There are three requirements for abstention to apply under *Younger*: (1) the federal court must abstain where the state court proceedings are pending when the federal action is filed; (2) the actions implicate important state interests; and (3) the state forum provides adequate opportunity to raise the federal claims. *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 431–32, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Wiener v. County of San Diego*, 23 F.3d 263, 266 (9th Cir.1994). If any one factor fails totally, or by application of an exception to the factor, the *Younger* abstention doctrine is not applicable. If the *Younger* abstention doctrine is determined to apply, that doctrine requires the outright dismissal of the federal suit, it is not a discretionary limitation but rather a jurisdictional limitation. *Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973).

### a. Factor One—State Proceedings Pending At Filing of Federal Action

The first factor would require the federal court to abstain where a state court proceeding was ongoing when the federal action was filed, immaterial of whether the federal court ruled after the conclusion of the state court proceedings. *Beltran v. California*, 857 F.2d 542, 547–48 (9th Cir.1988). "[T]he critical question [in the first factor] is not whether the state proceedings are still 'ongoing,' but whether the State proceedings were underway before initiation of the federal proceedings." *Kitchens v. Bowen*, 825 F.2d 1337, 1341 (9th Cir.1987) (*citing Fresh Int'l Corp. v. Agricultural Labor Relations Bd.*, 805 F.2d 1353, 1358 (9th Cir.1986)). The Supreme Court further explained the first factor by requiring *Younger* abstention if the state proceedings were initiated "before any proceedings of substance on the merits have taken place in federal court." *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 238, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984) (*quoting Hicks v. Miranda*, 422 U.S. 332, 349, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975)).

Although the State Court proceedings of a delinquency hearing and a probation revocation hearing were pending prior to and upon the filing of the Rainwaters' Chapter 13 petition, it has been held that the state proceeding must involve the same legal issues and the same statute as the federal proceeding involves. *Wiener*, 23 F.3d at 266. In this instance, the state proceeding and actions were for the enforcement of Alabama state law under its police powers and criminal proceedings. The state court proceeding did not involve the issue of a violation of the automatic stay found in 11 U.S.C. § 362. Further, the action in this Court does not contest either the delinquency hearing or the probation revocation hearing on any grounds other than 11 U.S.C. § 362. Therefore, the exception to the first factor of the *Younger* abstention doctrine is applicable as the State and the federal proceedings are involved with separate statutes and legal issues as well as separate sovereigns' enactment of the statutes in question.

### b. Second Factor—Implication of Important State Interests

Even with the exception of the first factor and its resultant determination of the inapplicability of the *Younger* doctrine, this Court shall analyze all the factors. The second factor in *Younger* requires that the proceedings, both state and federal, implicate an important state interest. Inclusive of a state's interest in its criminal law, punishment, and supervision of its probationers, a wide variety of state interests do qualify for the purpose of the *Younger* abstention doctrine. *See, Ohio*

*Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 625–29, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). As noted earlier by this Court, *infra*, the State has an acute interest in the application of federal law and statute. Therefore, the application, purpose, and provisions of the automatic stay can be deemed to be an important state interest that would be implicated by these proceedings.

However, this Court holds original and exclusive jurisdiction over cases under Title 11, thereby the determination of the application, purpose, and the provisions of 11 U.S.C. § 362 are within the sole jurisdiction of the federal court system. As an exception to the second factor, where the federal law has preempted state law, the *Younger* abstention doctrine is not required, because there is no important state interest due in fact to the lack of enforceability by state courts. *Gartrell Constr., Inc. v. Aubry*, 940 F.2d 437, 441 (9th Cir. 1991). Any determination by a state court in regards to the application, purpose, and provision of the automatic stay should not be given preclusive effect as the State forum's jurisdiction in such matters has been preempted under the Supremacy Clause and Congressional intent. Therefore, although the state does have an acute interest in its criminal proceedings and process, federal courts have an acute interest in fulfilling the intentions of Congress in making the Bankruptcy Code a meaningful and purposeful enactment of federal rights, duties, protections, and responsibilities. As to the second factor of the *Younger* abstention doctrine, it therefore also renders the Younger doctrine inapplicable, for the exception to the second factor is implicated.

### c. Third Factor—Adequate Opportunity Provided to Raise Federal Claims

The final factor in determining whether to apply the *Younger* doctrine is a determination of the adequacy provided by the State and its forum in the ability of the litigant to raise federal claims. "[I]n the absence of unambiguous authority to the contrary," a state court proceeding is presumed to be adequate to raise a federal claim. *Pennzoil, Co. v. Texaco, Inc.*, 481 U.S. 1, 15, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). Here, however, the federal claim cannot be brought in state court because Congress preempted state law on bankruptcy through the Bankruptcy Clause of the Constitution, and the enactment of the Bankruptcy Code. Again, this Court holds the original and exclusive jurisdiction over cases under Title 11. Pursuant to that grant of jurisdiction, this Court is empowered to make the original and exclusive determination of whether an action is in violation of, 11 U.S.C. § 362, the automatic stay. Therefore, the third factor of the *Younger* abstention doctrine indicates that it is inapplicable.

### D. Renewed Motion to Dismiss

The defendant, Ms. Bryan, renewed her motion to dismiss the complaint, as amended, and to dismiss this Court's order entered March 23, 1999. As grounds for this renewed motion, the movant asserted that the Rainwaters failed to state a claim upon which relief may be granted, a motion under Fed.R.Bankr.P. 7012(b)(6). Also, she asserts and claims "absolute quasi-judicial immunity," "qualified good faith immunity," and "absolute immunity." At the hearing held on March 30, 1999, this Court asked the parties if any preliminary matters needed to be addressed prior to conducting the merits of the case. As counsel for the defendant Patricia Bryant failed to assert this renewed motion to dismiss, this Court finds that the defendant has abandoned its motion and this motion is denied for want of prosecution on behalf of the movant. This Court will however, address the grounds for her motion.

On the movant's assertion that the Rainwaters have failed to state a claim upon which relief may be granted, this Court notes that such an assertion has already been discussed and determined,

*infra.* This Court will however, once again attempt to clarify its ruling under the defendants' Rule 7012(b)(6) motion. For the plaintiffs to succeed against a motion to dismiss for failure to state a claim upon which relief may be granted, the plaintiffs must have pled sufficient facts, that if assumed to be true, would support their claim and entitle them to relief. *Kelpe,* 98 B.R. at 480. Here, the Rainwaters have asserted a federal cause of action, that of an alleged violation of the automatic stay. To prevail in their cause of action under federal law, they must show that there is a bankruptcy petition, they are individuals, and the creditor willfully violated the stay in place under § 362. *See,* 11 U.S.C. § 362; *Jove,* 92 F.3d at 1546, 1549; *Mitchell Constr. Co. v. Smith (In re Smith),* 180 B.R. 311, 319 (Bankr.N.D.Ga.1995). The actions alleged by the plaintiffs in the complaint, assumed truthful for purposes of this renewed motion, indicate that the defendant, Ms. Bryan knew of the bankruptcy case, and after gaining such knowledge, committed intentional actions in an attempt to collect the pre-petition restitution payments. Therefore, under a Rule 7012(b)(6) analysis, the plaintiffs pled enough facts to state a claim upon which relief may be granted.

As to the defendant's renewed claims of immunity, this Court has previously ruled the arguments are without merit. As the movant has not requested a reconsideration of this Court's findings and conclusions, this Court's denial of the movant's claims of immunity still stands. As to the movant's request to dismiss this Court's order of March 23, 1999, this too is denied. There is not procedural grant of authority for this Court to dismiss a previous order. This Court may set aside an order of this Court, vacate its own order, or revisit and amend its own order, but nowhere in the Federal Rules of Civil Procedure or the Federal Rules of Bankruptcy Procedure does this Court have the grant of power or the authority to dismiss its own order.

## IV. VIOLATION OF THE AUTOMATIC STAY:

Having determined that this Court has the jurisdiction to hear this action and has the appropriate jurisdiction over the parties to subject the parties to the orders of this Court, it comes now to the merits of this adversary proceeding to determine whether a violation of the automatic stay occurred or whether the actions and state judgments were merely a 'continuation of a criminal proceeding.'

This Court will first lay the foundation of what constitutes a violation of the automatic stay. This Court will next dissect the actions of the defendants and the subsequent state court judgments. Finally, this Court will analyze whether these actions and judgments were in the nature of a 'continuing criminal proceeding,' or were in the nature of an attempt to collect upon a pre-petition debt.

The debtors' have the burden of proof by a preponderance of the evidence to demonstrate: (1) that a petition was filed under §§ 301, 302, or 303; (2) that the debtors' are 'individuals' under § 362; (3) that the defendants received notice of the petition; (4) that the defendants' actions were in willful violation of a § 362 stay; and (5) the debtors' suffered damages. *See,* 11 U.S.C. § 362; *Jove,* 92 F.3d at 1546, 1549; *Mitchell Constr.,* 180 B.R. at 319; *see generally, Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The defendants' will have the burden of proof by a preponderance of the evidence as to any defenses to these claims including: (1) immunities, *see infra;* (2) jurisdiction denying doctrines, *see infra;* and (3) inapplicability of the § 362 stay against the actions of the defendants.

### A. Factors Considered to Determine Violations of the Automatic Stay

#### 1. Element One—A Filed Petition

As to the first element, the Rainwaters filed a petition on September 18, 1998.

They filed a petition jointly, and therefore under 11 U.S.C. § 302, as of September 18, 1998 a bankruptcy petition was filed under Section 302.

### 2. Element Two—Petitioner Must be an Individual

The second element requires the debtor to be an individual. Although the Bankruptcy Code fails to define an individual, § 101(31) lists the four separate categories of "insiders" as: (1) an individual; (2) a corporation; (3) a partnership; and (4) a municipality. The intent of the Bankruptcy Code is evident in alluding to the fact that an individual should be defined not as an entity, but rather as a natural person, a being, or a physical bodily person. *In re Abacus Broadcasting Corp.,* 150 B.R. 925, 927 (Bankr.W.D.Tex.1993); *In re Prairie Trunk Ry.,* 125 B.R. 217, 220–21 (Bankr. N.D.Ill.1991). The Bankruptcy Code could not have used the term 'person,' as that word also denotes business or corporate entities for several Constitutional issues. This Court concludes that the Rainwaters are individuals within the context and meaning of the Bankruptcy Code.

### 3. Element Three—Willful Violation of a Stay Provided By § 362

The third element requires that the defendants willfully violated the stay provided by § 362. The test for determining whether a violation of an automatic stay is willful is: (1) whether the appellee knew of the stay, and (2) whether appellee's actions, which violated the automatic stay, were intentional. *Jove,* 92 F.3d at 1555–57 (11th Cir.1996); *Cuffee v. Atlantic Bus. and Community Dev. Corp. (In re Atlantic Bus. and Community Dev. Corp.),* 901 F.2d 325 (3rd Cir.(N.J.)1990); *In re Bloom,* 875 F.2d 224 (9th Cir.1989). Knowledge of the bankruptcy filing is the legal equivalent of knowledge of the automatic stay provided under § 362. *In re Stewart,* 190 B.R. 846, 849 (Bankr.C.D.Ill. 1996); *Wagner v. Ivory (In re Ivory),* 74 B.R. 898, 904 (Bankr.E.D.Pa.1987). Fur-

thermore, in determining whether the violation was willful, it is irrelevant whether the party believed in good faith that it had a right to the property at issue. *In re Lile,* 103 B.R. 830, 836–37 (Bankr.S.D.Tex. 1989). Not even a "good faith" mistake of fact or law, or a "legitimate dispute" as to legal rights relieve a willful violator of the consequences of his act. *Accord Nelson v. Taglienti (In re Nelson),* 994 F.2d 42, 44 (1st Cir.1993); *In re AM Int'l, Inc.,* 46 B.R. 566, 577 (Bankr.M.D.Tenn.1985). A creditor takes a calculated risk when it undertakes to make its own determination of what the stay means and fails to obtain clarification from the bankruptcy court to determine whether the its actions will violate the automatic stay. *In re Gray,* 97 B.R. 930, 936 (Bankr.N.D.Ill.1989); *In re Clark,* 49 B.R. 704, 707 (Bankr. D.Guam1985); *Pody v. Pody (In re Pody),* 42 B.R. 570, 573–74 (Bankr.N.D.Ala.1984).

The willful intention required in this element requires that the defendant's actions were intentional when it violated the stay. The intention required does not mean the defendant intended to violate the stay. *See Jove,* 92 F.3d at 1555–57 (failure to reprogram a computer to prevent tax collection notices from being sent violated the stay). "Under § 362(h), a debtor has the burden of providing a creditor with adequate actual notice of a pending bankruptcy case. When a creditor receives such actual notice, the burden is then on the creditor to assure that the automatic stay is not violated or, if it has been violated prior to receipt of actual notice, the burden is on the creditor to reverse any such action taken in violation of the stay." *Smith,* 180 B.R. at 319.

### B. Dissection of the Defendants' Actions

The actions by the defendants complained of by the Rainwaters began on September 25, 1998. On that date, Ms. Bryan not only received notice of their bankruptcy petition, she filed a Delinquency Report with the state criminal trial

court. Both defendants, Mr. Thompson and Ms. Bryan, then proceeded to prosecute this delinquency on September 28, 1998, where the state court adjudged the Mrs. Rainwater delinquent. If all parties and the State of Alabama, did not know of the debtors' bankruptcy petition prior to the revocation hearing, they received full knowledge of the debtors' petition on October 29, 1998.

In open court and upon the record, Mrs. Rainwater and her attorney testified and informed the state criminal trial court of the debtors' bankruptcy petition. Without acknowledging the question of federal law and federal rights under the Bankruptcy Code, the state court adjudged the debtor, Mrs. Rainwater, to be in violation of the terms of her probation. The state criminal trial court held that she had failed to pay any on her court ordered restitution, had made between $12,000 to $15,000 during the previous four months, and thereby had violated the term of her probation. Although her probation held six separate special conditions, the state court specifically found that Mrs. Rainwater had "refused since May 15 to make any payment toward restitution." (Tr., p. 21, *State v. Rainwater*, CC–98–79–70, Oct. 29, 1998). Upon that determination, the state criminal trial court revoked her probation and ordered her to serve her original sentence of 10 years incarceration.

Mrs. Rainwater was placed into the custody of the Clay County Sheriff's Office, which approximately three months later, transferred her to the Alabama Department of Corrections. Mrs. Rainwater moved the state criminal trial court to reconsider its order on November 24, 1998, where again the debtor's criminal attorney informed the state court of the debtors' Title 11 petition, but reconsideration was denied.

As the above facts indicate, the defendants' knew of the Rainwaters' Chapter 13 petition under Title 11 presently pending in this Court. The defendants' actions are deemed to be intentional. As the actions of filing a Delinquency Report, recommending revocation, appearing to testify and prosecute in a Delinquency Hearing, appearing to testify and prosecute in a Probation Revocation Hearing, taking the debtor physically into custody and incarcerating the debtor can be nothing short of intentional actions, the defendants' cannot and do not argue that these actions were mere unintentional and inadvertent acts.

As the actions, which began pre-petition, continued up until the habeas relief was granted, were ongoing and continual, this Court, at any stage of those actions, could take a 'snapshot' to determine whether the defendants, singularly or jointly, violated the automatic stay. The filing of a Delinquency Report, a Delinquency Hearing, disregard for and knowledge of the bankruptcy petition, revocation of probation as an enforcement of a restitution order, and counseling with the debtor on ways to be released from incarceration by agreeing to make restitution, appear to be an attempt by the State to collect, assess [or reassess], or recover a claim. Such actions, even under the guise of a continuing criminal proceeding, are in violation of the stay as determined by 11 U.S.C. § 362(a)(6).

The Rainwaters have met their burden of the proof: a petition was properly filed under § 302; the debtors are individuals under the meaning necessitated by § 362(h); the defendants received notice of the petition, the defendants' actions were willful under the holding in *Jove* and the debtors' have suffered damages as a result of the defendants' actions.

### C. Violation of the Automatic Stay or 'Continuation of a Criminal Proceeding'

The crux of this adversary proceeding turns on whether the actions of the defendants' were merely a 'continuation of a criminal proceeding.' For the defendants to succeed on a theory that their actions are excepted from the stay under § 362,

this Court must first look to the exceptions laid out by Congress. In pertinent part, 11 U.S.C. § 362(b) provides:

(b) The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay—

(1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor;

11 U.S.C. § 362(b)(1). Under the only applicable exception to the automatic stay, the actions taken by the defendants must be shown to be in the nature of a continuing criminal proceeding.

The Ninth Circuit eloquently handled a case with quite similar facts. In *Hucke*, the issue was whether a state criminal proceeding undertaken while an automatic stay was in force was actually an attempt to collect money. *Hucke*, 992 F.2d at 953. In order to determine that issue, the Ninth Circuit looked beyond the title of that proceeding to determine the true nature behind the proceeding:

"Certainly, the mere institution of a probation revocation proceeding, without more, would constitute a continuation of a criminal action against the defendant/debtor and, thus, be exempt from the automatic stay.... However, if the probation hearing had as its aim the collection of the fine, then it would run afoul of § 362(a)(6), which stays acts intended to "collect, assess or recover a claim" against the debtor. In sum, if the present state revocation proceeding constituted collection efforts, then it would violate the automatic stay and would be void."

*Id.* (*quoting* 11 U.S.C. § 362(a)(6)). In *Hucke*, the debtor pled guilty to assault and rape, and the court sentenced him to five years probation conditioned upon his payment of over $20,000 in restitution and fines. If he violated the conditions of his probation, the state court held jurisdiction to impose the prison sentence of 36 months. The debtor subsequently filed a bankruptcy petition without having paid

any monies toward the court-ordered restitution. Because he was in violation of the terms of his probation, the state sought revocation, whereby the state court revoked his probation and imposed the original 36 month prison sentence. Hucke then filed an adversary proceeding seeking to void the revocation of his probation on the contention that his revocation violated the automatic stay. Looking beyond the apparent criminal nature of the revocation proceedings, the Ninth Circuit concluded that the automatic stay did not apply because the state court had "made it very clear during the revocation proceedings that [it] was not interested in collecting the fine," and in fact had "rejected the offer of Hucke's counsel to restructure the Chapter 13 plan so that payments on the compensatory fine would come close to one hundred percent of the total amount imposed." *Hucke*, 992 F.2d at 951–53.

### 1. Application of 11 U.S.C. § 362(b)(1)

The Ninth Circuit has also stated that state court actions that modify court orders violate the automatic stay when such a modification has an economic impact upon the debtor. *Stringer v. Huet (In re Stringer)*, 847 F.2d 549, 552–53 (9th Cir.1988) (holding that any proceedings in violation of the 362 stay are void, and a modification order, increasing support by $100, violated the stay.). The Supreme Court holds that the automatic stay precludes probation officials from enforcing restitution orders while a debtor seeks relief under Chapter 13 of Title 11. *Davenport*, 495 U.S. at 560–61, 110 S.Ct. 2126. A distinct part of the enforcement of a restitution and probation order is the direct, and sometimes, imminent power to pursue a modification, i.e., the revocation of that probationer's probation and restitution thereby incarcerating the probationer through the original prison sentence. *Id.* at 559–60, 110 S.Ct. 2126. Thus, a governmental entity is in violation of the automatic stay in bankruptcy if it acts upon a debtor's failure to pay fines or restitution,

without leave of the bankruptcy court, because the underlying character of a criminal restitution order is still merely a "right to payment." *Id.*

The Supreme Court realized that the application of § 362 not only hampers the flexibility of state criminal judges in fashioning appropriate sentences while requiring state prosecutors to safeguard state interests, but also constitutes an intrusion into the operation of the state courts. However, the concerns regarding judicial restraint "cannot justify rewriting the [Bankruptcy] Code to avoid federal intrusion." *Id.* at 552, 560–61, 110 S.Ct. 2126. If Congress was unhappy with the precedent held forth in *Davenport,* it has had almost nine years to overturn that decision. Instead, Congress only encroached upon the *Davenport* holding to ensure that criminal restitution was not dischargeable. *See,* 11 U.S.C. § 1328(a)(3).

■ The facts in *Hucke* distinguish that case from the one at hand. In *Hucke,* the state court proceedings were in opposition to the state attempting to collect the restitution. The state court specifically refused any attempt to pay or allow collection of the restitution. Here, although the state court knew of Mrs. Rainwater's bankruptcy petition, the criminal court was silent as to the restitution requirements. The state trial court ordered the termination of Mrs. Rainwater's probation: it is unclear whether that order also terminated the order to pay restitution. Presently, while this case was pending and before Mrs. Rainwater was released, the state had begun counseling Mrs. Rainwater as to the aspect of the payment of restitution while incarcerated, and the release of Mrs. Rainwater subject to an order for restitution. It appears by the actions and omissions of the defendants that the revocation of Mrs. Rainwater's probation was merely an attempt to collect, assess, or recover a claim against the debtor.

## 2. Other Alternatives for State Court Action

■ Application of Section 362(a) requires a creditor to act affirmatively to reverse actions which would violate the automatic stay. *See, e.g., Franchise Tax Bd. v. Roberts (In re Roberts),* 175 B.R. 339, 343–44 (9th Cir. BAP 1994) (failure to stop a garnishment when notified of the automatic stay was a willful violation meriting sanctions.). The stay requires that a creditor maintain the status quo and to remedy actions taken in ignorance of the stay. *Walters v. Sherwood Mun. Ct. (In re Walters),* 219 B.R. 520, 526–27 (Bankr. W.D.Ark.1998). This is true in a case where the debtor, who is arrested on a warrant for failure to pay a fine or restitution and later advises the court of a bankruptcy case, cannot be required to pay the restitution in order to be released from incarceration. *In re Barboza,* 211 B.R. 450, 452–53 (Bankr.D.R.I.1997). Even the court has the obligation to verify the bankruptcy filing and release the debtor if the sole purpose of the arrest was to collect a pre-petition debt. *Id.* Further, a court may not prohibit or otherwise preclude a debtor from paying the restitution through the plan. *Walters,* 219 B.R. at 527 (*citing In re Veasley,* 204 B.R. 24 (Bankr. E.D.Ark.1996)). The court in *Veasley* stated:

"... it is the province of the bankruptcy court to determine what terms or treatment *shall* be provided for in the Chapter 13 plan. No creditor or other court has the power or authority to direct the debtor to act in contravention of the law or make particular provisions in a plan of reorganization. If a creditor believes that the plan does not comply with the law or seeks to require additional terms, the remedy is to object to the plan and seek an Order from the Bankruptcy Court directing inclusion of particular terms."

*Veasley,* 204 B.R. at 26. (emphasis in original)

The State may believe that the debtors have not have properly provided for the restitution in their Chapter 13 plan. That question is not before this Court, and this Court declines to hypothecate upon such in this adversary proceeding. However, if the State so believes, it could participate in the confirmation of the debtors' case and proposed plan to support and facilitate its position as a creditor. As such, the State of Alabama could have avoided these proceedings by moving for relief from the stay.

■■■ When the law and a party is uncertain as to the applicability of the automatic stay, the creditor should file a motion so that the bankruptcy court can make a determination as to its applicability. A creditor who fails to so file, and acts without approval of the bankruptcy court, does so at its own peril. *Birk v. Simmons (In re Birk)*, 108 B.R. 657, 660–61 (Bankr. S.D.Ill.1988) (holding that the automatic stay did not bar a revocation hearing where the debtor failed to show it was brought in bad faith, or as an attempt to collect the restitution, thereby constituting the continuation of a criminal proceeding.). The State, as a creditor, took a calculated risk when it attempted to enforce its "right to payment" by revocation of Mrs. Rainwater's probation order. The result of that risk-taking will allow a probation violater to remain free so long as she complies with her Chapter 13 plan and this Court's orders. This Court only ponders upon one rhetorical question: was the result worth the risk in light of the simple requirement of seeking relief from this Court?

### D. *Damages Under 11 U.S.C. § 362(h) and as Applied Through 11 U.S.C. § 106(a)(3), (4)*

This Court, having determined that the automatic stay applied, and that the actions of the defendants' were not excepted under 362(b)(1) from the automatic stay, now turns its analysis to the equitable relief and damages sought. The Rainwaters seek injunctive relief, a writ of habeas corpus, and compensatory and punitive damages.

### 1. *Injunctive Relief and Writ of Habeas Corpus*

■■■ Under 11 U.S.C. § 105 and 106, this Court is empowered to issue any orders necessary to carry out the provisions of Title 11. Although state criminal proceedings are generally exempted from the automatic stay, this Court may enjoin such actions. *See, e.g., Hucke v. Oregon (In re Hucke)*, 127 B.R. 258, 266 (Bankr.D.Or.) *rev'd in part* 992 F.2d 950 (9th Cir.1993); *Birk*, 108 B.R. at 660; *Munroe v. Lasch*, 73 B.R. 909, 914 (E.D.Wis.1987); *In re Redenbaugh*, 37 B.R. 383, 385 (Bankr. C.D.Ill.1984). Therefore, this Court can issué an order enjoining the defendants from attempting to revoke Mrs. Rainwater's probation or otherwise attempt to collect, assess, or recover the ordered restitution so long as the debtor complies with this Court's orders, her proposed Chapter 13 plan, and maintains payments to the Trustee as provided for in the plan.

■■■ Before an injunction should issue against another court or its officials, to prevent it from violating the automatic stay, the debtor has the burden of proof to demonstrate that the danger of future violations is more than a mere possibility. *See, e.g., Washington v. Hale (In re Washington)*, 146 B.R. 807, 811 (Bankr.E.D.Ark. 1992). As the debtors, as well as the defendants by their actions, have shown, there is more than just a mere possibility that the state court and the defendants would violate the stay, thus, an injunction shall be issued. This Court notes that the standing precedent of the Eleventh Circuit allows for equitable relief to be awarded against state prosecutors and other state officials. *Slavin v. Curry*, 574 F.2d 1256, 1264 (5th Cir.1978).

As discussed previously, this Court has already made the determination that Congress intended for bankruptcy courts to have the power to issue writs of habeas

corpus. The Bankruptcy Court in *Hucke* also came to that conclusion, but erred on the side of caution and allowed the District Court to actually issue and effectuate the writ. This Court has issued an outstanding and effectuated writ of habeas corpus on Mrs. Rainwater.

### 2. Damages Awards

 As stated above, Section 362(h) allows for compensatory damages, costs, and, in appropriate circumstances, an award of punitive damages. Pursuant to 11 U.S.C. § 106, this Court cannot fashion a monetary award against a governmental unit to include punitive damages. Therefore, the Rainwaters are not entitled to punitive damages against any defendant. The plaintiffs also waived and dismissed any award of compensatory damages against the defendant, Michael Haley of the ADOC, in open court and upon the record o March 23, 1999. This Court has previously concluded that it has jurisdiction over the defendant, District Attorney Thompson, solely by use of the *Ex Parte Young* doctrine. As that doctrine only permits prospective injunctive relief, this Court cannot award damages against this defendant for his actions in violation of the automatic stay. The only remaining defendant who could have compensatory damages awarded against her is Ms. Bryan.

 As for compensatory damages, this Court can only award such if it has been determined, after the holding in *Seminole*, that § 106 was enacted pursuant to Section 5 of the Fourteenth Amendment. The Court requested the parties brief the issue of the constitutionality of § 106, and provide oral argument upon their position. Upon review of the record, the testimony, exhibits, briefs, motions, and oral argument, this Court finds that the plaintiff failed to meet any burden of proof as to the constitutionality of Congress's abrogation of immunity from compensatory damages. The Court declines to entertain the question of the constitutionality of § 106. As the plaintiffs failed to meet their burden, this Court will leave this question unanswered to allow the Circuits to come into a greater consensus on this issue. Accordingly, this Court holds that all parties have waived and abandoned this constitutional question and its underlying authorization to award compensatory damages.

The Supreme Court however, clearly stated that under the doctrine of *Ex parte Young*, the only relief available to the plaintiff was prospective injunctive relief. There is not an available grant of monetary relief against a State save for that authorized by each respective state law, or by federal abrogation of the State's sovereign immunity. There is possible abrogation of such through the enactment of 11 U.S.C. § 106. As this Court has declined to determine the constitutionality of § 106 through the apparent waiver and abandonment of that issue by the parties, it concludes that no monetary award of compensatory damages can be awarded. The plaintiffs may have a cause of action arising from an application of 42 U.S.C. § 1983, but that issue is not before this Court and thus, this Court declines to entertain it.

## V. CONCLUSION

Having determined that this Court has jurisdiction over these parties and these causes of action, this Bankruptcy Court holds that the defendants failed in their burden of proof to present arguments for the application of any of a number of enumerated immunities. This Court specifically concludes that the exception, found in *Ex parte Young*, is directly applicable in this case and therefore the Eleventh Amendment immunity proffered by District Attorney Thompson is unavailable. As the absolute immunities claimed failed to support the numerous motions to dismiss, those immunities fail.

The automatic stay is a legal creature created by federal statute, and exists to effectuate the exclusive federal authority

and jurisdiction over bankruptcy proceedings. The determination of the applicability of the automatic stay is squarely and exclusively within the purview of the federal courts. Accordingly, this Court has been granted the authority, power, and jurisdiction to issue all writs and further, to enjoin the actions of a State or a State's officials when those actions are in the nature of a collection, assessment, or recovery of a pre-petition claim taken against a debtor seeking protection under Title 11, and without the leave, approval, and relief from the stay granted by this Court.

This Bankruptcy Court concludes that neither the *Rooker–Feldman* doctrine nor the *Younger* doctrine is applicable to preclude this Court from determining whether the actions of the defendants, and the state criminal trial court delinquency and revocation proceedings are void due to the violations of the automatic stay.

The actions of the defendants, Probation Officer Patricia Bryan and District Attorney Fred Thompson, Jr., in full knowledge of a pending Chapter 13 petition, violated the automatic stay as their efforts and actions were an attempt to collect, assess, or recover a pre-petition claim by the outright enforcement of a probation and restitution order issued by a state criminal trial court. In a continuation, the actions of the Alabama Department of Corrections, as represented by Michael Haley, in attempting to counsel the debtor in regards to paying restitution in order to reduce or eliminate her sentence of incarceration further exasperated the actions of these defendants in the continuing attempt to collect, assess, or recover a pre-petition claim without leave, approval, or relief from the stay by this Bankruptcy Court. As actions done in violation of the automatic stay are a legal nullity and void ab initio, action precipitous from those are likewise a legal nullity and void ab initio.

This Bankruptcy Court further concludes that the only relief available to the plaintiffs is prospective injunctive relief and the issuance of a writ of habeas corpus. This Court requested the parties to brief, in support and opposition, the constitutionality of the Congressional abrogation of immunity from compensatory damages in 11 U.S.C. § 106. Upon receipt of the parties' briefs, and upon the conclusion of testimony, evidence, and oral argument at trial, this Court concludes that all parties have failed to meet any burden of proof upon this issue, and this Court deems the issue waived.

A separate judgment and order will be issued from this Bankruptcy Court consistent with this memorandum opinion including this Court's findings of facts and conclusions of law.