**In re Donald BIRK, Jr., Diane Birk, Debtors/Plaintiffs,**

v.

**David W. SIMMONS, Defendant.**

**Bankruptcy No. 86–50310.**
**Adv. No. 88–0100.**

United States Bankruptcy Court, S.D. Illinois.

July 26, 1988.

Scott Hendricks, Granite City, Ill., for plaintiffs.

Carol L. Cagle, Alton, Ill., for defendant.

## OPINION

BASIL H. COUTRAKON, Bankruptcy Judge.

The issue before the Court is whether the state violated the automatic stay when it held a probation revocation hearing based on the Debtor's failure to pay a criminal restitution obligation.

The Debtor, Donald F. Birk, was convicted of the crime of leaving the scene of an accident on April 28, 1986, after entering a negotiated plea of guilty. He was sentenced to two years supervised probation. In addition, as a special condition of the probation, the Debtor was ordered to pay restitution to his victims in the amount of $1,830.65 and court costs and a contribution to the Crime Victims Compensation Fund in the amount of $36.00. The judgment and conviction were entered in Reynolds County, Missouri. Since the Debtor is a resident of Granite City, Illinois, the case was transferred to Illinois under the Interstate Corrections Compact.

On July 11, 1986, the Debtor filed a petition in bankruptcy pursuant to Chapter 13 of the Bankruptcy Code. The victims of the auto accident were listed as creditors in the petition. The Debtor's confirmed Chapter 13 Plan provides for a 100% payment of this debt.

As of March 1, 1988, according to the Defendant, the Debtor had not made any payments toward his restitution obligation or the court costs. Accordingly, the Defendant, David Simmons, the Debtor's probation officer, contacted the Illinois authori-

ties and suggested that they notify the Debtor of his duties under the probation order.

In a letter dated March 11, 1988, the Debtor's attorney informed the Defendant that the Debtor had filed a Chapter 13 Petition in bankruptcy, and that the restitution obligation was covered by the Chapter 13 Plan. The letter suggested that any attempt to collect this debt other than through the confirmed plan would violate the automatic stay of 11 U.S.C. Sec. 362.

The state court sentencing Judge, Donald Lamb, reviewed the Debtor's file and the relevant correspondence. As a result of this review, Judge Lamb concluded that the restitution obligation was not covered by bankruptcy law. Therefore, Judge Lamb directed the Defendant to set up a revocation hearing for April 20, 1988. On April 12, 1988, the Defendant sent a violation report and notification of revocation hearing to the Debtor and his attorney.

On April 14, 1988, the Debtor's attorney sent the Defendant's attorney a letter outlining the Debtor's position, wherein he reasserted his belief that the restitution obligation was covered by the Chapter 13 Plan, and that any attempt to collect the debt outside of the Chapter 13 Plan would violate the automatic stay.

On April 18, 1988, the Defendant's attorney sent the Debtor's attorney a letter explaining the position of the board of Probation and Parole that the revocation hearing was not stayed by 11 U.S.C. Sec. 362(a). Several cases were cited in support of this position, including *In re Vik*, 45 B.R. 64 (Bankr.N.D.Iowa 1984) and *United States v. Alexander*, 743 F.2d 472 (7th Cir.1984).

The revocation hearing was held as planned on April 20, 1988. The Debtor appeared at the hearing without counsel, because his counsel was obligated to be in court that day in a distant city. Nevertheless, Judge Lamb extended the Debtor's probation for one year.

On April 25, 1988, Donald Birk, along with his wife Diane Birk, filed the instant action. The complaint alleges a violation of the automatic stay of 11 U.S.C. Sec. 362 and discriminatory treatment by a governmental unit in violation of 11 U.S.C. Sec. 525. The complaint also seeks to enjoin further actions in the state criminal court pursuant to 11 U.S.C. 105(a).

The Debtors have apparently abandoned their discriminatory treatment claim; they failed to adduce evidence in support of this claim or to address the issue in their brief. All the evidence before the Court indicates that Donald Birk was treated just like any other probationer who fails to pay his court ordered restitution and court costs, and that the actions of the Defendant were consistent with the Division of Probation and Parole Manual of Operations. Because of the dearth of evidence or argument in support of the Sec. 525 Claim, the Court will confine its discussion in this Opinion to the question of whether there was a violation of the automatic stay.

The filing of a bankruptcy petition operates to automatically stay most acts to collect pre-petition debts. 11 U.S.C. Sec. 362. However, 11 U.S.C. Sec. 362(b)(1) specifically excepts from the stay "the commencement or continuation of a criminal action or proceeding against the Debtor." The legislative history to this provision indicates that "bankruptcy laws are not a haven for criminal offenders, but are designed to give relief from financial over-extension. Thus, criminal actions and proceedings may proceed in spite of bankruptcy." House Report No. 95–595, 95th Cong, 1st Sess. 342 (1977); Senate Report No. 95–989, 95th Cong. 2nd Sess. 51 (1978) U.S. Code Cong. & Admin.News 1978, pp. 5787, 5837, 5963, 6298.

In the case at bar, the holding of the probation revocation hearing constitutes the "continuation of a criminal action or proceeding." The restitution obligation and court costs were assessed against the Debtor by the state criminal court as special conditions of probation. They are an integral part of the state court criminal process. Therefore, the automatic stay did not bar the probation revocation hearing. *In re Gilliam*, 67 B.R. 83, 87 (M.D.Tenn. 1986); *In re Vik, supra*, 45 B.R. at 66.

■ Although state criminal proceedings are exempted from the automatic stay, this Court may enjoin such actions pursuant to 11 U.S.C. Sec. 105. *See, In re Redenbaugh*, 37 B.R. 383 (Bankr.C.D.Ill.1984); *Munroe v. Lasch*, 73 B.R. 909, 914 (E.D. Wis.1987). However, this injunctive power is circumscribed by the *"Younger* abstention doctrine" which severely limits the circumstances in which a federal court may enjoin a state court criminal action. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The *Younger* court noted that the principles of federalism and comity are major considerations in deciding whether a federal court should interfere with a state court criminal proceeding. *Id* at 44, 91 S.Ct. at 750. The Court further stated that "in view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient, unless it is both great and immediate." *Id* at 46, 91 S.Ct. at 751.

■ The Debtors have made no showing that they will suffer irreparable harm to a federally protected right if the probation revocation proceeding is not enjoined. The Debtors have offered no evidence that directly shows or even suggests that the state court proceedings were brought in bad faith or to harass the debtor. Moreover, the Debtor's current probation period has been extended for a year. There is no threat of revocation at this time. If probation revocation is threatened in the future, the Debtor may plead his 100% Chapter 13 Plan in defense and explain his efforts to pay his debts. *See, In re Gilliam, supra,* 67 B.R. at 83. Under these circumstances, the Debtors have not shown sufficient grounds for an injunction of the probation revocation hearing or of the restitution obligation. *See, In re First Texas Petroleum*, 52 B.R. 322, 329 (Bankr.N.D.Texas 1985); *Munroe v. Lasch, supra,* 73 B.R. at 916; *In re Guthrel*, 43 B.R. 4 (Bankr.E.D. Mo.1984).

■ Despite our holding that the Defendant did not violate the automatic stay, the Court cannot condone the actions of the Defendant. There is a substantial conflict in the case law as to whether restitution payments required as part of a criminal sentence are dischargeable in a Chapter 13 case. *Compare, In re Cancel*, 82 B.R. 674 (Bankr.N.D.N.Y.1988) with *In re Heincy*, 78 B.R. 246 (B.A.P. 9th Cir.1987). The cases are even split on the fundamental question of whether a criminal restitution obligation is a "debt" under the Code. *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 361, 93 L.Ed.2d 216 (1986) ("[W]e have serious doubts whether Congress intended to make criminal penalties 'debts' within the meaning of [11 U.S.C.] Sec. 101(4)"). *Compare, In re Oslager*, 46 B.R. 58 (Bankr.M.D.Pa.1985); *In re Vik, supra; In re Pellegrino*, 42 B.R. 129 (Bankr.D.Conn. 1984) and *In re Button*, 8 B.R. 692 (Bankr. W.D.N.Y.1981) with *In re Heincy, supra; In re Johnson–Allen*, 69 B.R. 461 (Bankr. E.D.Pa.1987) and *In re Cullens*, 77 B.R. 825 (Bankr.D.Colo.1987). Where the law is this uncertain, the creditor should first file a motion with the bankruptcy court to determine the applicability of the automatic stay. *In re Clark*, 49 B.R. 704, 707 (Bankr.D.Guam 1985); *In re Pody*, 42 B.R. 570, 573 (Bankr.N.D.Ala.1984); *In re Batla*, 12 B.R. 397, 400 (Bankr.N.D.Ga.1981). Creditors who act without court approval do so at their peril. *In re American International, Inc.*, 53 B.R. 744 (Bankr.M.D. Tenn.1985).

Notwithstanding the foregoing, the Debtor in this case is not entirely blameless. When the Debtor received notice of the probation revocation hearing, the Debtor should have filed a motion for clarification of the automatic stay or a complaint for injunctive relief pursuant to 11 U.S.C. Sec. 105. *See, In re Cullens*, 77 B.R. 825 (Bankr.D.Colo.1987). If the Debtor had submitted this matter to the bankruptcy court instead of taking matters into his own hands, a great deal of time, effort, and needless litigation would have been avoided.

It appears that part of the problem in this case is a breakdown in communication between the parties. Although the parties are talking, they appear to be doing so on different wavelengths. The affidavit of

the Defendant and the documents prepared by the Defendant indicate that the Debtor has not paid anything toward his restitution and court costs. The Debtor's only explanation is that he proposed a 100% Chapter 13 Plan and that the plan was confirmed. Inexplicably, the Debtor never stated that he had actually made any payments toward the plan. The Defendant never looked into whether the Debtor was making his Chapter 13 payments, but this is not surprising since neither the Defendant nor the Reynolds County Circuit Court were scheduled as creditors or received notice of the bankruptcy prior to March 1988. Nevertheless, the Chapter 13 Trustee's report of receipts and disbursements filed January 8, 1988, indicates that the Debtor paid over $2,000.00 towards his Chapter 13 Plan. The report also indicates that only three creditors filed claims, and that the victims' claim of $2,386.28 constituted almost half of the total debt of the filed claims. Thus, the Chapter 13 Trustee has received substantial payments from the Debtor which are to be disbursed to the victims according to the plan, and coincidentally pursuant to the Circuit Court's restitution order. However, there is no evidence that any of this money has actually been disbursed to the victims.[1] Thus, the Defendant may be correct in his assertion that the victims have not received their restitution payments. Since the court costs are not covered by the plan, the Defendant is correct in stating that the Debtor has not paid his court costs. The Debtor has not tried to explain this omission.

In order to remedy the lack of communication between the parties, the parties are hereby directed to report to the Court within 15 days the amount of money the Debtor has paid to the Chapter 13 Trustee, the amount the Trustee has received from the Debtor, the amount actually disbursed by the Trustee, and whether the money was distributed to the victims or the insurance company.

For the foregoing reasons, the Court finds that the Defendant did not violate the automatic stay and that an injunction of further proceedings in state criminal court is not warranted. Therefore, the Debtor's complaint is DENIED.

---

1. It is unclear whether these payments are to be made to the victims or their insurance company. It is also unclear why the victims filed a claim for $2,386.28 when the Court ordered restitution of only $1,830.65.