In re Johnny Posey COULTER, Debtor.

Johnny Posey Coulter, Plaintiff,

v.

John Benjamin Aplin, Kimberly Manning, Willie Lemon, Stephanie Garrick, and South Carolina Department of Probation, Parole and Pardon, an Agency of the State of South Carolina, Defendants.

No. C/A 03–04496–W.
Adversary No. 03–80323–W.

United States Bankruptcy Court,
D. South Carolina.

Aug. 7, 2003.

Janne Berry Osborne, Orangeburg, SC, for Debtor.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court on June 10, 2003, upon the Complaint for Violation of Automatic Stay pursuant to 11 U.S.C. § 362[1] (the "Complaint") and a mo-

tion for an emergency hearing on the request for injunctive relief filed by Johnny Posey Coulter ("Debtor" or "Plaintiff"). After considering the pleadings and the arguments of counsel; the Court makes the following Findings of Fact and Conclusions of Law:[2]

## FINDINGS OF FACT

1. Debtor filed for relief under Chapter 13 of the United States Bankruptcy Code on April 11, 2003.

2. Debtor's Schedules included two (2) debts owed to Defendant South Carolina Department of Probation, Parole and Pardon (the "SCDPPPS").[3] The debts include debts for restitution and supervision fees in connection with Debtor's having pled guilty to the offense of unlawful practice of a regulated profession (contracting) or knowingly submitting false information for the purpose of obtaining a license. S.C.Code Ann. § 40–1–200 (Law.Co-op.2000).

3. Defendant John Benjamin Aplin ("Aplin") is a Staff Attorney for SCDPPPS, Defendant Kimberly Manning ("Manning") is Debtor's Parole Agent, and Defendants Willie Lemon ("Lemon") and Stephanie Garrick ("Garrick") are supervisors; SCDPPPS was added as a Defendant on June 5, 2003, following the filing of an Amended Complaint on the same date (collectively, the "Defendants").

4. Defendants represented as follows with respect to Debtor's criminal proceed-

---

1. Further references to the United States Bankruptcy Code will be by section and number.

2. The Court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

3. Two proof of claims were filed by SCDPPPS. Claim No. 4 is clearly for restitution and supervision fees related to criminal conviction. Claim No. 2 appears to be a tax claim. The record is not clear how these claims are related.

ing:[4]

Judge Brown sentenced Plaintiff to one year imprisonment "suspended with probation for 5 years and subject to the South Carolina Department of Probation, Parole and Pardon Services standard conditions of probation, which are incorporated herein by reference." Judge Brown also imposed the following special conditions: (1) restitution in the amount of seventeen thousand two hundred twenty-eight and 05/100 dollars ($17,228.05) "plus 20% fee," creating a total restitution obligation of twenty thousand six hundred seventy three and 66/100 dollars ($20,673.66). He also ordered "PTUP" as a special condition, which is an acronym for "probation terminates upon payment" pursuant to section 24–21–550 of the South Carolina Code. The Department's Standard Conditions of Probation, which the Plaintiff acknowledged and signed his agreement to, include the Debtor's assertions that (1) "I shall pay a supervision fee as determined by the Department," and (2) "I shall obey all conditions of supervision as set forth in this order including the payment of fines, restitution or other payments . . . ." (Defendants' Post Hearing Brief at 2) (citations omitted).

5. A monthly payment schedule was established by SCDPPPS in the amount of $422.00 toward restitution and $25.00 toward supervision fees.

6. Upon filing bankruptcy, Debtor scheduled in his Chapter 13 case a balance owed to SCDPPPS in the amount of $12,633.00 for restitution and $1,025.00 for supervision fees.

7. Debtor filed his Chapter 13 Plan (the "Plan") on April 14, 2003. Notice of the filing of the Chapter 13 Plan and a copy of the Chapter 13 Plan were provided to SCDPPPS on the same date. The Notice clearly set forth the deadline for filing objections to confirmation and further directed the parties to "**REVIEW THE PLAN AND RELATED MOTIONS CAREFULLY TO DETERMINE THE TREATMENT OF YOUR CLAIM UNDER THE PLAN.**"

8. Debtor's Chapter 13 Plan provides for payment in full of the restitution and fees owed over a period of 60 months or sooner and was styled as follows with respect to SCDPPPS:

g. **SPECIAL DEBT**—Payments of $222.00 or more to SCDPPPS for the DACOR until the value of the claim plus 0.00% interest has been paid in full.

Payments of $18.00 or more to SCDPPPS for the Supervision until the value of the claim plus 0.00% interest has been paid in full.

9. Objections to Debtor's Chapter 13 Plan were due by May 9, 2003. SCDPPPS did not file an objection to confirmation of Debtor's Chapter 13 Plan.

10. On May 27, 2003, SCDPPPS filed an unsecured proof of claim in the amount of $13,207.66 for "court ordered restitution, 11 U.S.C. § 1328(a)(3)".[5]

11. On May 29, 2003, a Probation Citation and Notice of Probation Violation Hearing and Acknowledgment of Notice was issued to Debtor during his monthly probation reporting, with a hearing sched-

---

4. Defendants referenced as exhibits to the Post Hearing Brief copies of the June 15, 2001 Sentencing Sheet as well as Plaintiff's Standard Conditions of Probation. Neither were attached, however, the underlying facts do not appear to be in dispute.

5. The discrepancy between the $13,658.00 scheduled in Plaintiff's Chapter 13 Plan and the $13,207.66 listed in SCDPPPS's proof of claim is due to a February, 2003 payment to SCDPPPS that was not initially credited.

uled before the Orangeburg County Court of General Sessions (the "State Court") for June 11, 2003 (the "Probation Violation Hearing"). The stated basis of the violation was Debtor's failure to pay restitution and fees.

12. Debtor's Chapter 13 Plan was confirmed by Order of this Court entered on June 2, 2003.

13. Debtor filed this adversary proceeding on May 29, 2003 and sought by motion an expedited hearing on his Complaint before this Court seeking to enjoin the scheduled June 11, 2003 Probation Violation Hearing and any other such proceeding.

14. On June 10, 2003, the Court issued a temporary injunction of the June 11, 2003 Probation Violation Hearing until further order for the Court to consider the merits and permit the parties to brief the matter.[6]

## CONCLUSIONS OF LAW

The question before the Court is whether the Probation Violation Hearing (and Defendants acts associated with the hearing), which was scheduled postpetition upon Debtor's failure to pay the restitution and fees according to the prepetition schedule established by SCDPPPS, is a violation of the automatic stay of § 362, should be enjoined because it is primarily in the nature of a collection of a debt, or should be barred due to the res judicata or binding effect of a confirmed plan.

Debtor argues that § 362 operates to stay the Probation Violation Hearing since it is clearly based upon a failure to pay the restitution and fees addressed in the Plan, and that damages are warranted for Defendants' attempt to pursue recovery of the restitution and fees outside of the bankruptcy case. Debtor also argues that an injunction of the Probation Violation Hearing is warranted. Further, Debtor argues that the Court's Order Confirming Debtor's Chapter 13 Plan is *res judicata* and Defendants cannot through a State Court proceeding alter the treatment of the claims addressed therein.

Defendants argue that § 362 does not stay a criminal proceeding, including the Probation Violation Hearing. Further, § 105 cannot be used to enjoin the hearing because (1) the Probation Violation Hearing is not a debt collection action and (2) the *Younger* doctrine precludes a federal court from enjoining state criminal proceedings.[7] Defendants do not address in their post-hearing brief the *res judicata* effect of the Plan nor their failure to object to the Plan despite a request by the Court at the hearing on June 10, 2003.

The first question to be addressed is whether § 362(b) operates as a stay in this matter. Once the applicability of § 362 is addressed, the Court must consider the binding effect of the treatment of SCDPPPS as set forth in the Court's Order Confirming Debtor's Chapter 13 Plan, i.e., the *res judicata* effect of the Plan and whether § 105 may be used to enjoin the state proceedings. Finally, the Court must consider the affirmative defenses raised by Defendants, including a lack of jurisdiction.

---

**6.** Defendants filed an Answer and Motion to Dismiss the Complaint on June 6, 2003. At the hearing on Debtor's request for an expedited hearing and for a temporary injunction on June 10, 2003, the parties agreed that the Court could address the Complaint, Motion to Dismiss, and Answer and that the Court should enter a final decision on the Complaint as a matter of law following the submission of post-hearing briefs without any further argument or evidence.

**7.** Citing *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746 (1971).

*11 U.S.C. § 362*

11 U.S.C. § 362(b)(1) provides that the stay does not apply to "the commencement or continuation of a criminal action or proceeding against the debtor." Despite the arguably straightforward language of the statute, some courts have determined that if the actual purpose of the criminal proceeding is to collect a debt, then the automatic stay would be applicable. *See, e.g., Walters v. Sherwood Municipal Court (In re Walters),* 219 B.R. 520 (Bankr.W.D.Ark. 1998) (municipality's arrest of a debtor for nonpayment of restitution fees violated the stay); *In re Barboza,* 211 B.R. 450, 452 (Bankr.D.R.I.1997) ("if sole objective of a post-petition probation hearing is to collect restitution, then that proceeding may be a violation of the automatic stay.").

Other Courts have ruled that § 362 does not operate a stay against *any* criminal proceeding. In *In re Byrd,* the bankruptcy court held that post-discharge government prosecution of a debtor for his pre-petition issuance of bad checks was not stayed by § 362, even where his release was conditioned upon payment of the full amount of the restitution. 256 B.R. 246 (Bankr.E.D.N.C.2000). The court found that "[t]he filing of a bankruptcy action should have no impact on whether a prosecuting entity elects to commence or continue a criminal action against a debtor, even if the action is based on a debt that will be dealt with in the bankruptcy case." *Id.* at 252. The court so found even where the debtor had already received his Chapter 7 discharge.[8] *See, e.g., In re Gruntz,* 202 F.3d 1074 (9th Cir.2000) (section 362 does not stay state court criminal proceeding against debtor for failure to pay child support, even if the purpose is debt collection); *In re Bibbs,* 282 B.R. 876 (Bankr.

E.D.Ark.2002) (following reasoning in *Gruntz*); *Bryan v. Rainwater,* 254 B.R. 273, 278 (N.D.Ala.2000) ("plain language and structure of [362(b)] in its entirety indicate that the continuation of a criminal proceeding is not subject to the automatic stay, notwithstanding the fact that the proceedings might involve an attempt to collect, assess, or recover a claim."); *In re West,* No. 95–2011, 1995 WL 17005063, at *2 (Bankr.S.D.Ga. June 2, 1995) (despite debtor's intention to pay fine in full in Chapter 13 plan, broad language of § 362(b)(1) did not stay incarceration of debtor for failure to pay fine).

Several Fourth Circuit Court of Appeals opinions, although unpublished, provide the Court with guidance on this subject. In *Kimberlin v. Bidwell,* the Fourth Circuit affirmed the decision of the Maryland District Court holding that the initiation of parole revocation proceedings was not violative of the automatic stay. No. 98–6831, 1998 WL 830834 (4th Cir. Dec. 2, 1998). The District Court had noted that the "revocation proceedings were based upon petitioner's lack of rehabilitation through his acceptance of responsibility for his crimes and sincere attempts to make amends to its victim. It was not undertaken solely as a collection action. . . ." *Kimberlin v. Dewalt,* 12 F.Supp.2d 487, 498 (D.Md.1998), *aff'd sub nom.,* 1998 WL 830834. *See also United States v. Troxler Hosiery Co.,* 796 F.2d 723 (4th Cir.1986), *aff'g* 41 B.R. 457, 461 (M.D.N.C.1984), (adopting decision of District Court which determined that a criminal sentence, whether imprisonment or fine, is not "direct compensation for pecuniary loss but is punishment for violation of the criminal law."). While both *Kimberlin* and *Troxler* considered whether the essential purpose of the proceeding was criminal or a collec-

---

**8.** The court in *Byrd* expressly limited its holding to prosecuting entities and not individual creditors that pursue criminal prosecution post-petition in order to prompt a criminal action to recover a debt.

tion effort, other Fourth Circuit cases do not find it relevant to address the nature of the proceeding.

In *Sylvestre v. Safeway, Inc.*, the Fourth Circuit held that § 362(b) should be applied literally and does not operate to stay a contempt proceeding based upon the filing of a criminal complaint to collect a bad check debt. No. 91–2689, 1992 WL 111853 (May 27, 1992). Despite recognizing that "the use of criminal process to collect debts may frustrate the purpose of the automatic stay," the Fourth Circuit held that § 362(b) is unambiguous. *Id.* at *1. The Court further noted that "[n]early every court that has examined the scope of § 362(b) has concluded that 'criminal action' includes all criminal actions." (citation omitted). *See Sylvestre*, 1992 WL 111853, at *1. Finally, in *Simonini v. Bell (In re Simonini)*, the Fourth Circuit recently expressed that § 362(b) is unequivocal and does not stay the continuation of a criminal proceeding, regardless if collection of a debt is related to the criminal proceeding. No. 02–2021, 69 Fed.Appx. 169, 171, 2003 WL 21500197, at *2 (4th Cir. July 1, 2003).[9]

■ Under either of the approaches espoused by the Fourth Circuit, whether as a matter of statutory construction or because Debtor has not met his burden of showing that the essential purpose of the Probation Violation Hearing is a collection effort, this Court is not presently persuaded that the automatic stay precludes the holding of the Probation Violation Hearing in this case.[10] In as much as § 362(a) is not applicable, the Court further denies at this time any request for monetary damages against Defendants pursuant to § 362(h).

### *Res Judicata & § 1327*

■ The issue remains whether this Court's Confirmation Order, entered after

---

**9.** The Court notes that the Fourth Circuit in *Simonini* also rejected the use of § 105 to enjoin such a criminal proceeding and the District Court's use of a "core impact" test. That test determined that "[i]f the core essence of the prosecution impacts the debtor mostly in the manner of a creditor's attempt to violate an automatic stay to collect funds, the prosecution is actually a debt collection that violates automatic stay policy and must be enjoined under 105." *In re Simonini*, 282 B.R. 604, 614–16 (W.D.N.C.2002), *vacated by Simonini*, 69 Fed.Appx. 169, 2003 WL 21500197. The Fourth Circuit cited the "clear language of § 362(b) excepting all criminal prosecutions from the automatic stay and 'the fundamental policy against federal interference with state criminal prosecutions.' " *Simonini*, 69 Fed.Appx. at 171, 2003 WL 21500197, at *2 (citing *Kelly v. Robinson*, 479 U.S. 36, 47, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986)) (quoting *Younger v. Harris*, 401 U.S. 37, 46, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)).

The Court further stated in broad sweeping language that "allowing an injunction of a state criminal proceeding would achieve ends contrary to § 362(b) and would disregard the clear language and meaning of other bankruptcy rules." *Simonini*, 69 Fed.Appx. at 171, 2003 WL 21500197, at *2. The Court noted that the equitable powers of § 105(a) are not " 'a license for a court to disregard the clear language and meaning of the bankruptcy statute and rules.' " *Id.* (citing *United States v. Carolina Parachute Corp.*, 907 F.2d 1469, 1475 (4th Cir.1990)) (quoting *Off'l Comm. of Equity Sec. Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir.1987)).

However, the facts in the case before this Court are clearly distinguishable from those in *Simonini*. In this case, SCDPPPS elected to participate in the bankruptcy case by filing proofs of claim, failed to object after proper notice of Debtor's Plan which properly addressed and characterized the claims and is bound by this Court's Confirmation Order. Use of § 105 is necessary and proper to enforce this Court's Confirmation Order as stated hereinafter.

**10.** The Court recognizes that should this proceeding go to trial that Debtor might argue that the Probation Violation Hearing is actually in the nature of a collection of a prepetition debt. However, considering the ruling in this matter and the parties stipulations, it is unnecessary to consider that argument further at this time.

notice and a copy of Debtor's Chapter 13 Plan was provided to SCDPPPS and without objection by Defendants, is binding on Defendants pursuant to § 1327 and principles of *res judicata* and therefore stands as a procedural bar to the Probation Violation Hearing and Defendants participation therein. A bankruptcy court confirmation order is generally afforded a statutory *res judicata* effect. *Piedmont Trust Bank v. Linkous*, 990 F.2d 160, 162 (4th Cir.1993). Courts have "consistently applied *res judicata* principles to bar a party from asserting a legal position after failing, without reason, to object to the relevant proposed plan of reorganization or to appeal the confirmation order." *First Union Comm'l Corp. v. Nelson, Mullins, Riley and Scarborough (In re Varat Enterprises, Inc.)*, 81 F.3d 1310, 1315 (4th Cir.1996) (citations omitted).

■ The *res judicata* effect of a Chapter 13 plan is set forth in § 1327:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

11 U.S.C. § 1327. This section "essentially prevents a creditor from asserting any rights after confirmation other than the rights specifically provided for in the plan." *In re Durham*, 260 B.R. 383, 386–87 (Bankr.D.S.C.2001) (citations omitted).

■ However, the Fourth Circuit has held that if notice to the affected creditor does not satisfy due process, the confirmation order would not be afforded preclusive effect. *Banks v. Sallie Mae Serv. Corp. (In re Banks)*, 299 F.3d 296, 302 (4th Cir.2002) ("[w]here the Bankruptcy Code and Bankruptcy Rules specify the notice required prior to entry of an order, due process generally entitles a party to receive the notice specified before an order binding the party will be afforded preclusive effect."). *See also, e.g., GEC Auto Lease v. Eron (In re Eron)*, No. 00–2343, 2001 WL 985113 (4th Cir. Aug.24, 2001) (creditor not bound by terms of Chapter 13 plan where plan failed to fully "provide for" creditor's claim); *Deutchman v. IRS (In re Deutchman)*, 192 F.3d 457 (4th Cir. 1999) (same); *In re Linkous*, 990 F.2d 160 (4th Cir.1993) (creditor not bound where notice did not reference reclassification and valuation of interest pursuant to § 506(a)).

■ Accordingly, the Court must examine whether notice to SCDPPPS satisfies due process. *See In re Durham*, 260 B.R. 383, 387 (Bankr.D.S.C.2001) (pivotal issue in determining *res judicata* effect of Chapter 13 plan is whether creditor received adequate notice that its rights would be modified by the plan's treatment of its claim). The matter before the Court is distinguishable from the line of Fourth Circuit cases declining to accord *res judicata* effect to certain Chapter 13 plans. There is no adversary proceeding, modification of lien or valuation procedure required to establish SCDPPPS's interest, and the Plan "provides for" their claim within the meaning of § 1327.

Defendants do not attempt to defend their failure to object to Debtor's Plan. Defendants have stated no argument that they did not receive a copy of the Plan or

that notice to them was insufficient. Furthermore, SCDPPPS does not argue that the treatment to be accorded it in the Plan is ambiguous or confusing. Debtor's Chapter 13 Plan clearly and accurately characterizes the claim of SCDPPPS. The Plan states the total amount and provides for the full payment of the claim of SCDPPPS through monthly payments of $222.00 or more and $18.00 or more. The Plan does not propose to reclassify SCDPPPS's claim or pay any amount less than that set forth in its proof of claim filed with the Court on May 27, 2003. The Plan merely provides for payment on a different schedule than that established by SCDPPPS prepetition. This different schedule appears necessitated by Debtor's limited ability to pay and his obligations to pay other creditors.

Since the Court cannot find any defect in notice, particularly given the clear treatment of SCDPPPS's claim set forth therein, its undisputed receipt of the Plan, and its filing of a proof of claim in an amount contemplated by the Plan to be paid in full, SCDPPPS is bound by the Debtor's confirmed Plan and the repayment terms provided therein for reasons previously addressed. *See Varat Enterprises,* 81 F.3d at 1310 ("Once a plan is confirmed, neither a debtor nor a creditor can assert rights that are inconsistent with its provisions."); *Stuart, L.L.C. v. First Mount Vernon In-*

*dus. Loan Ass'n (In re Peramco Int'l),* No. 00–1163, 2001 WL 101463, at *5 (4th Cir. Feb. 7, 2001) (creditor was bound by its acceptance of a Chapter 11 Plan that clearly set forth treatment of certain property).[11]

A recent bankruptcy court opinion with a similar set of facts is instructive. In *In re Perrin,* a Chapter 13 plan providing for payment of criminal fines was confirmed without objection. 233 B.R. 71 (Bankr. D.N.J.1999). The treatment of the fine extended the repayment for a term beyond that permitted by state law. The debtor was subsequently issued a notice of reconsideration of its criminal case, and the municipal court vacated its order imposing a fine and re-sentenced the debtor. Upon consideration of a motion to vacate the municipal court order, the bankruptcy court ruled that "[d]espite the municipal court's concern regarding state law provisions governing installment plans for payment of fines, the manner of payment of the debtor's fine is no longer a question of state law once a petition in bankruptcy is filed. The repayment of claims is governed by the Bankruptcy Code, even when it conflicts with state law." *Id.* at 79 (citing *Perez v. Campbell,* 402 U.S. 637, 652, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) (the Supremacy Clause overrules the effect of conflicting state law)).[12] SCDPPPS has

---

11. Ordinarily according to state law, if restitution in a criminal matter is imposed, a payment schedule is to be "in equal monthly payments that will result in full restitution and collections fee being paid by the end of eighty percent of an offender's supervision period." S.C.Code Ann. § 17–25–322(C) (Law.Co-op.2003). Debtor was sentenced to five (5) years probation, and the sentencing order was issued on June 15, 2001. Debtor's 57–month Chapter 13 Plan will presumably extend the repayment terms beyond the four years specified (80% of Debtor's 5–year supervision period). However, if SCDPPPS wished to argue that state law required specific terms

for repayment, it should have timely raised the argument by objection to the Plan.

12. In *Perrin,* the court ultimately found that in vacating its previous order and resentencing the debtor, the municipal court judge was not restructuring the debtor's repayment plan, but was waiving its monetary claim. The Chapter 13 plan did not preclude the continuation of the court's "discretionary authority to fashion appropriate punitive and deterrence measures" as a consequence of debtor's violations. *Id.* at 80 (citing *Hucke v. State of Oregon,* 992 F.2d 950, 954 (9th Cir.1993),

provided the Court with no authority that the *res judicata* effect of the Plan is abrogated in this case.

At the hearing on June 10, 2003, Defendants recognized that Debtor could raise his pending Chapter 13 case, the fact that his Chapter 13 Plan provides for payment of the restitution and fees in full, and the Court's Order Confirming the Chapter 13 Plan at the Probation Violation Hearing.[13] In fact, as one court noted:

> [T]he debtor can plead his Chapter 13 plan in defense and explain to the state criminal court the extent of his continuing efforts to pay the fine and costs through the confirmed plan. It is not obvious why the district attorney general would desire to revoke the debtor's probation for nonpayment of a fine and costs if the debtor is engaged in a substantial effort to pay the fine and costs through the Chapter 13 plan and if success in that effort is demonstrated.

*Gilliam v. Met. Gov't (In re Gilliam),* 67 B.R. 83, 87 (Bankr.M.D.Tenn.1986). *See also United States v. Lominac,* Nos. 94–5238, 94–5240, 94–5241, 1994 WL 510242 (4th Cir. Sept.20, 1994) (court at probation revocation hearing properly considered filing of bankruptcy in determining whether failure to remit restitution payments was reasonable); *Birk v. Simmons (In re Birk),* 108 B.R. 657, 660 (Bankr.S.D.Ill. 1988) ("[i]f probation revocation is threatened in the future, the Debtor may plead his 100% Chapter 13 Plan in defense and explain his efforts to pay his debts.").

However, this Court must have an ability to give force and effect to its orders and maintain the integrity of the bankruptcy confirmation process. Therefore, this Court finds that SCDPPPS is bound by the Plan and the repayment terms provided therein and that further injunction of the Probation Violation Hearing as specified hereinafter is warranted.

### Affirmative Defenses

■ Defendants initially raise as defenses to this action abstention, qualified immunity and immunity under the Eleventh Amendment. Defendants primarily argue that the Eleventh Amendment poses a jurisdictional bar to the assertion of any claim against them. First, the Court notes that the filing of a proof of claim may result in a waiver of Eleventh Amendment immunity by a state or state agency. When a state or arm of a state files a proof of claim, it waives Eleventh Amendment immunity with regard to claims that arise from the same transaction or occurrence which supports the state's claim:

> When a state authorizes its officials voluntarily to invoke federal process in a federal forum, the state thereby consents to the federal forum's rules of procedure and may not invoke sovereign immunity to protect itself against the interposition of defenses to its action. . . . [T]o the extent a defendant's assertions in a state-instituted federal action, including those made with regard to a state-filed proof of claim in a bankruptcy action, amount to a *compulsory* counterclaim, a state has waived any Eleventh Amendment immunity against that counterclaim.

*Schlossberg v. Maryland (In re Creative Goldsmiths, Inc.),* 119 F.3d 1140, 1148–49 (4th Cir.1997).

---

*overruled on other grounds by In re Gruntz,* 202 F.3d 1074 (9th Cir.2000)).

**13.** Defendants recognized in their post-hearing brief that the court hearing the Probation Violation Hearing must consider whether a failure to pay restitution is willful, and that Debtor's Chapter 13 filing would certainly be relevant to that determination.

■ Further, "when a state 'files a claim against the fund [in a bankruptcy action] it waives any immunity which it otherwise might have had respecting the adjudication of the claim.'" *In re T & T Fuels, Inc.,* No. 02–1026, 55 Fed.Appx. 121, 124, 2003 WL 61218, at *2 (4th Cir. Jan.9, 2003) ("[I]f a state invokes the aid of the bankruptcy court in collecting a debt, it must submit to the bankruptcy court's process of adjudicating the competing interests in the bankruptcy estate.") (quoting *Gardner v. New Jersey,* 329 U.S. 565, 574, 67 S.Ct. 467, 91 L.Ed. 504 (1947)).

■ There appears to be no dispute that SCDPPPS was authorized to file its proof of claim which seeks to collect from the bankruptcy estate the restitution and fees required by the sentencing order. Debtor's request for injunctive relief to enforce the manner in which the claims are to be paid arises out of the same transaction, occurrence and operative facts that gave rise to the claims. *See In re Creative Goldsmiths,* 119 F.3d at 1149 (considering whether action arises out of same transaction or occurrence supporting proof of claim). Additionally, the Court notes that the request for injunctive relief does not seek to compel affirmative action by or recovery from SCDPPPS, but to prohibit collection of the restitution and fees in any manner contrary to the Plan. Therefore, this Court finds that the facts meet the Fourth Circuit's requirements for waiver of Eleventh Amendment immunity as set forth in *Creative Goldsmiths.* By its action, SCDPPPS waived any defense of sovereign immunity to this adversary proceeding.[14]

■ Furthermore, the Eleventh Amendment does not bar enforcement of a bankruptcy court's order confirming a plan given that the confirmation order was itself not entered in a "suit" against a state but rather arose from bankruptcy court's jurisdiction over debts and their estate. *Maryland v. Antonelli Creditors' Liquidating Trust,* 123 F.3d 777 (4th Cir.1997). By filing two proofs of claim, SCDPPPS elected to participate in the administration of Debtor's estate and submit to the Bankruptcy Court's jurisdiction to control property of the estate and issue a binding confirmation order. Clearly, Defendants are bound by the confirmation order in this case.

■ Secondly, under the *Ex Parte Young* doctrine, this Court has jurisdiction to consider whether injunctive relief, as sought in the Complaint and contemplated by this Order, is warranted against the named individual Defendants, or other responsible state officials. *See Alston v. State Board of Medical Examiners (In re Alston),* 236 B.R. 214, 216–18 (Bankr. D.S.C.1999) (citing *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714

---

**14.** Defendants request in the post-hearing brief that SCDPPPS be permitted to withdraw SCDPPPS's proofs of claim if the action "in filing a proof of claim somehow obstructs its ability to participate in the probation violation proceeding." (Defendants' Post–Hearing Brief at 18–19). The Court notes that Federal Rule of Bankruptcy Procedure 3006 governs withdrawals of proofs of claim. If an adversary proceeding is filed against a creditor that has filed a proof of claim or if a creditor has participated significantly in the case, "the creditor may not withdraw the claim except on order of the court after a hearing on notice to the trustee or debtor in possession...." Additionally, the Court finds that a post confirmation withdrawal of the proofs of claim does not cure the waiver or eliminate jurisdiction existing at the time of confirmation. *See Stanley v. Student Loan Servs. (In re Stanley),* 273 B.R. 907, 911 (Bankr.N.D.Fla.2002) (cannot restore sovereign immunity by withdrawing proof of claim); *In re Barrett Refining Corp.,* 221 B.R. 795, 814 (Bankr.N.D.Okla. 1998) (same). Accordingly, Defendants' request to withdraw SCDPPPS's proofs of claim in its post-hearing brief is not proper and will not be allowed by the Court in this Order.

(1908)). *See also Wilson v. Cumis Ins. Society, Inc. (In re Wilson),* 246 B.R. 600, 603–04 (Bankr.E.D.Ark.2000) (*Ex Parte Young* permits injunction against state official to prevent violation of federal law). The individual Defendants' future participation in the Probation Violation Hearing on behalf of the state based upon Debtor's failure to pay on a basis contrary to the confirmed plan would be a violation of § 1327. Therefore, the Court finds that state sovereign immunity does not prohibit injunctive action against the individual Defendants.

◼ Next, Defendants also assert that Plaintiff's claims are barred by qualified immunity. Qualified immunity "shields a governmental official from liability from civil monetary damages if the officer's 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wiley v. Doory,* 14 F.3d 993 (4th Cir.1994) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). For reasons previously set forth, the imposition of monetary damages are not presently being considered, thus qualified immunity is not an issue.

Finally, Defendants ask the Court to abstain from enjoining the Probation Violation Hearing because the Probation Violation Hearing is criminal in nature. Defendants primarily rely on the United States Supreme Court's general rule recognized in *Younger v. Harris* that state criminal proceedings should not be impeded absent bad faith, harassment, and extraordinary circumstances. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746 (1971). In *Younger v. Harris,* the United States Supreme Court noted that "it has been perfectly natural for our cases to repeat time and time again that the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." 401 U.S. at 45, 91 S.Ct. 746. The Supreme Court further spoke in *Kelly v. Robinson* that "[t]his Court has emphasized repeatedly 'the fundamental policy against federal interference with state criminal prosecutions'" and that "the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief." 479 U.S. 36, 49, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) (citing *Younger,* 401 U.S. at 44–46, 91 S.Ct. 746).

◼ However, it is clear that 11 U.S.C. § 1322 permits a debtor's Chapter 13 plan to address a debt which is in the nature of criminal restitution. Prior to the 1990 amendments of the Bankruptcy Code, debts for restitution were not only subject to a bankruptcy plan but were considered dischargeable even if not fully paid upon completion of a Chapter 13 plan. *See Cullens v. District Court (In re Cullens),* 77 B.R. 825, 828 (Bankr.D.Colo.1987). However, in that year, Congress, adopting the House version of legislation, amended § 1328(a) to provide an exception from discharge "for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime."

The House Report states:

A criminal restitution victim will participate fully as a creditor in a Chapter 13 plan. Following completion of the plan, any remaining portion of the restitution obligation will remain owed to the victim until fully paid.

H.R. REP. No. 101–681, at 165 (1990), U.S.Code Cong. & Admin.News 1990, pp. 6472, 6571

It is clear that Congress intended that a restitution debt could be provided for in a Chapter 13 plan. While the payment of

restitution can be managed in a Chapter 13 plan, upon failure to be paid in full, the balance is nondischargeable. During the bankruptcy, the likely source of payment for such restitution and fees is a debtor's postpetition wages which are property of the bankruptcy estate pursuant to § 1306 and necessary to the administration of the case. Since the matter before the Court involves property of the bankruptcy estate, the application of the automatic stay and the Court's enforcement of its Orders, it raises core matters essential to the orderly administration of the bankruptcy case. Therefore, the Court shall not abstain from hearing the Complaint. *See* 28 U.S.C. § 157(b).

For these reasons, the Court finds it has jurisdiction over the subject matter and parties to consider the matters raised by the pleadings.

*Conclusion*

The Court has an inherent authority to enforce its orders and confirmation orders under § 1327, as well as appropriate enforcement authority pursuant to § 105 and its contempt powers. Therefore, to the extent that Defendants require Debtor to report to or schedule the Probation Violation Hearing based upon Debtor's failure to pay the restitution and fees under any schedule which is contrary to the confirmed Plan in this case, Defendants would be acting in violation of the Court's Confirmation Order, the Plan and § 1327.[15]

However, to be clear, to the extent there are other probation conditions or grounds Defendants can cite as the basis for a hearing, a future probation violation hearing or other criminal proceeding may proceed. This Order is *not* a bar to any further hearing or assertion of *other grounds* for a violation of probation or other punishment of Debtor.

Therefore, for the reasons set forth herein, the Court finds that the automatic stay does not preclude continuation of the Probation Violation Hearing. However, the Order Confirming Debtor's Chapter 13 Plan is binding on SCDPPPS and therefore to the extent the Probation Violation Hearing or any future hearing is based upon Debtor's failure to pay restitution or supervisory fees according to a schedule contrary to terms of the confirmed Plan, it is barred and enjoined. Defendants and other officials of SCDPPPS or the State of South Carolina are also enjoined from initiating or participating in such a hearing based upon those stated grounds. To allow otherwise would nullify the force and effect of this Court's Confirmation Order and § 1327. Likewise, Debtor is required to pay the restitution and fees to SCDPPPS through the Chapter 13 Trustee according to the confirmed Plan and any post confirmation failure to pay according to the confirmed Plan may be grounds for dismissal or conversion of the bankruptcy case or other relief.

**AND IT IS SO ORDERED.**

---

**15.** The Court's use of § 105 in this instance is not inconsistent with § 362; in fact, it is necessary to preserve the force and effect of § 1327. See *In re Walters,* 868 F.2d 665 (4th Cir.1989).